899 P.2d 185

**In re the Marriage of Kenneth Leroy SCHNEPP, Jr., Petitioner–Appellee,**

v.

**STATE of Arizona, ex rel., the DEPARTMENT OF ECONOMIC SECURITY (Evonne Grace Schnepp), Respondent–Appellant.**

**No. 1 CA–CV 93–0489.**

Court of Appeals of Arizona, Division 1, Department D.

July 11, 1995.

**26**

Lewis & Hull by Kevin S. Lewis, Phoenix, for petitioner-appellee.

Grant Woods, Atty. Gen. by Mark E. Drury, Connie S. Scoggins, Asst. Attys. Gen., Phoenix, for respondent-appellant.

## OPINION

VOSS, Judge.

In this appeal we hold that Father's child support obligation did not terminate when he signed a consent to adopt form. We further hold that the record does not contain evidence to support the trial court's conclusion that Mother waived the right to collect arrearages that accrued between the date Father signed the consent to adopt form and the date he learned that the adoption was not finalized.

## FACTS AND PROCEDURAL HISTORY

Appellee Kenneth Leroy Schnepp, Jr., ("Father") and Evonne Grace Schnepp Groff ("Mother") were married in August 1974. Two children were born of the marriage. The parties' marriage was dissolved on August 12, 1976. The court awarded Mother custody of the minor children with reasonable visitation rights to Father, and ordered Father to pay child support in the amount of $50 per month per child.

Soon after the dissolution decree was entered, Father enlisted in the U.S. Navy. While serving in the Navy, his child support obligation was paid by a wage allotment. Following his discharge from the Navy in 1980, Father stopped making child support payments—furthermore, he stopped visiting the children.

Father remarried in 1981 and started a new family. In 1982, Father and his new wife briefly visited the children; however, he was introduced to them as a friend of their uncle. At that time, Mother asked Father to resume paying child support. Father and Mother also discussed the possibility of adoption of the children by Mother's new husband. Nothing was resolved as a result of their discussion. Father continued to not pay child support, and he made no further attempts to visit the children.

In 1986, Mother contacted Father and asked him to help pay for his daughter's medical bills. Father told her he could not afford to give her any money, but he offered to add the daughter to his health insurance policy. Mother called Father a few more times and threatened to take him to court to seek back child support. At some point, Mother told Father that she did not expect anything from him.

Later in 1986, Father received in the mail a Consent of Natural Parent to Adoption Form. The form provided that by giving consent, Father waived notice of any further proceedings regarding the adoption. He executed the consent form and mailed it to Mother. Father believed that by signing the consent form he gave up his right to have any contact with his children, and he was

released from any liability for future child support payments or arrearages. However, Father admits that Mother never promised him a release from his obligation of child support. Although Mother did not file the adoption papers, Father assumed that the children had been adopted. Father never tried to verify whether the final order of adoption was entered.

In January 1993, the State obtained an Order of Assignment against Father's wages for $560 per month, which represented $100 per month for current child support and $460 per month for child support arrearages. It was at this time that Father learned the children had not been adopted. A review hearing was set to determine the amount of arrearages and physical custody of the children.

Following the hearing, the trial court ruled that Mother waived child support from the time Father signed the consent to adopt form in 1986 until the Order of Assignment was issued in 1993, which was the time when Father learned that the adoption was not finalized. The court applied the equitable defenses of laches and/or equitable estoppel to find that Mother waived the right to collect any arrearages owing for that time. The court found that Mother abandoned the claim for arrearages and/or Father was prejudiced by her failure to inform him that the adoption was not finalized. The trial court found that between June 1986 and January 1993, Father, reasonably relying on the assumption that he no longer was obligated to pay support, had four children with his second wife.

The trial court ultimately found that Father was obligated to pay child support of $100 per month from January 1980 to June 1986, which he had not paid. The obligation for that period totaled $6,600. And when Father learned in January 1993 that his children had not been adopted, his obligation to pay child support resumed. Determining the total amount of time the children lived with Mother from January 1993 to April 1993 before they were emancipated, the court found Father owed $100 for child support during this time period. Deducting payments made from wage assignments, the trial court concluded that Father owed $5,645 for

back child support from January 1980 to June 1986, and from January 1993 to April 1993.

The State appealed from the order.

## DISCUSSION

### A. Standard of Review

In reviewing findings of facts and conclusions of law, we are bound by the trial court's findings of fact unless they are clearly erroneous. *Arizona Bd. of Regents v. Phoenix Newspapers, Inc.*, 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991). However, we are not bound by the trial court's conclusions of law, and we may reach our own conclusions of law based on the facts found by the trial court. *Id.*

### B. Child Support Arrearages

#### 1. Termination of Child Support

On appeal, the State argues that the trial court erred in finding a waiver of child support because the evidence does not support a finding of waiver, and Mother had no authority to waive child support arrearages by asking Father to sign an adoption consent form.

We first address the latter argument. The State is correct that under Arizona law, without court approval Mother has no authority to modify a child support order through an agreement with Father. Only the court has the authority to determine whether the facts justify modification of a support award. Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 12-2453(C), 25-327(A) (Supp. 1994); *State ex rel. Dept. of Economic Sec. v. Dodd*, 181 Ariz. 183, 185, 888 P.2d 1370, 1372 (App.1994); *In re Cordova v. Lucero*, 129 Ariz. 184, 186, 629 P.2d 1020, 1022 (App. 1981). However, the issue here is whether the equitable defenses of waiver, estoppel, or laches otherwise prevent Mother's claim for arrearages.

We note that the only issue before us regarding waiver is whether the trial court erred in concluding that Mother waived or was estopped from recovering child support arrearages that accrued from the time Father signed the adoption consent form until he learned that the adoption was not final-

ized. In Father's answering brief he contends that the trial court was correct in its conclusion that Mother waived the child support owed by Father. To support his argument, Father relies on events that occurred between 1980 and 1986. Because the trial court granted judgment in favor of Mother for arrearages that accrued from January 1980 to June 1986, and Father did not appeal or cross-appeal from the judgment, the portion of the judgment concerning arrearages from 1980 to 1986 is not at issue on appeal.

■ We must determine whether Father's signing of the adoption consent form ended his obligation for future child support. We conclude that it did not. The execution of a consent to adoption alone is insufficient to terminate a noncustodial parent's court-ordered obligation to make child support payments. *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420, 424 (1986). As set forth in A.R.S. section 8–539 (1989), a parent's duty to support his or her child does not end until a final order of adoption is entered:

> An order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations with respect to each other except the right of the child to inherit and support from the parent. This right of inheritance and support shall only be terminated by a final order of adoption.

This statute reveals the legislature's emphasis regarding the importance of the child support obligation; even an order terminating the parent-child relationship does not terminate the child's right to receive support from the parent. Only a final adoption order suffices to terminate the parent's duty of support.

■ Given this compelling indication of the significance of the support obligation, as well as the law that parents have no authority to modify child support orders without court approval, we conclude that the execution of a consent to adoption form does not terminate the signing parent's duty to support the child or children to be adopted. Therefore, after Father signed the adoption consent form, his obligation to pay child support continued. Because the adoption was never finalized, Father's obligation did not end.

### 2. Waiver

■ To establish that Mother waived the claim for child support arrearages, Father must show by "clear and compelling evidence" that Mother voluntarily and intentionally abandoned a known right. *Dodd*, 181 Ariz. at 186, 888 P.2d at 1373; *In re Ray v. Mangum*, 163 Ariz. 329, 332, 788 P.2d 62, 65 (1989); *Cordova*, 129 Ariz. at 187, 629 P.2d at 1023. If the evidence reflects a dispute between the parties over their unspoken assumptions and intentions, one party's belief that the other waived child support cannot provide clear and convincing evidence of waiver. *Ray*, 163 Ariz. at 333, 788 P.2d at 66. The level of evidence necessary to establish waiver includes a waiver in writing or the custodial parent's admission that he or she intended to waive child support arrearages. *Id.* For example, in *Cordova*, the mother wrote a letter to the children's father telling him that she did not want his support, that she did not want him to see the children, and that she was going to have her new husband adopt the children. *Cordova*, 129 Ariz. at 185, 629 P.2d at 1021.

■ Here, Father argues that Mother waived the arrearages by telling him that she did not expect anything from him. It is not clear from the record when Mother made that statement. And in her opening statement, which she made while appearing *in propria persona*, Mother explained that when she made that statement she did not intend to terminate his obligation for child support—she just did not expect that he would pay it. Mother did not make any representation to Father that the signing of the adoption consent form would terminate his obligation to pay child support. Hence, the record does not contain clear and compelling evidence that Mother waived the child support arrearages that accrued between June 1986 and January 1993.

### 3. Estoppel

■ Equitable estoppel may also defeat a claim for arrearages. *Dodd*, 181 Ariz. at 186, 888 P.2d at 1373. The elements of

estoppel are the following: conduct by which one induces another to believe in certain material facts; acts resulting from justifiable reliance on the inducement; and injury caused by the resulting acts. *Id.* Recovery of child support arrearages may be barred by equitable estoppel only when the party asserting estoppel presents clear and compelling evidence to support such a finding. *Id.* at 187, 888 P.2d at 1374.

#### a. Conduct

■ Although Father presented some evidence supporting the elements of equitable estoppel, he failed to establish the elements by clear and compelling evidence. Here, in support of his estoppel argument, Father introduced the following evidence: Mother sent the adoption consent form to Father; she failed to enforce the support order between 1986 and 1993; she failed to keep Father informed of the children's whereabouts; and she failed to inform Father that the adoption did not take place.

#### b. Reasonably Induced

The receipt of the adoption consent form did not reasonably induce Father to believe his obligation to pay child support terminated. The law provides that child support is not terminated until the adoption is final. A.R.S. § 8–539. Furthermore, nothing in the consent form indicated that Father was released from his child support obligation upon signing the form. And Mother did not make any representation that he would be released from his obligation. Father's assumption that his consent to adoption terminated his child support obligation is not sufficient to meet the clear and compelling standard. *See Dodd,* 181 Ariz. at 187, 888 P.2d at 1374; *see also Williams v. Williams,* 206 Neb. 630, 294 N.W.2d 357, 362 (Neb.1980) (holding more required to invoke doctrine of equitable estoppel than just the father's signing of consent to adoption form).

Similarly, Mother's failure to enforce the child support order between 1986 and 1993 did not reasonably induce Father to believe his obligation had ended. The trial court found that Mother's failure to attempt to collect child support between 1980 and 1986 did not bar her from recovering the arrearages that accrued in that time period. Furthermore, the court in *Dodd* concluded that the custodial parent was not estopped from collecting arrearages where she did not attempt to recover them until nearly nine years after the noncustodial parent began underpaying the ordered child support payments. *Dodd,* 181 Ariz. at 188, 888 P.2d at 1375. Accordingly, we find that Mother's failure to attempt to collect child support between 1986 and 1993 did not reasonably induce Father to believe that his obligation ended.

■ Likewise, Mother's failure to keep Father informed of the children's location and to notify him that the adoption was not finalized did not reasonably induce him to believe his obligation to pay child support had terminated. Mother never contacted Father about the children's whereabouts; however, she did not hide the children from him, and they could have been located easily. Father admitted that between 1982 and 1993 he did not try to locate his children. Father signed the adoption consent form that waived notice of the adoption proceedings; however, he could have learned whether the adoption was final. A parent who is required to pay court-ordered child support is not entitled to stop payments based on his or her assumption that an adoption has been finalized. To comply with A.R.S. section 8–539, the support-paying parent may not cease payments until a final order of adoption has been entered.

#### c. Justifiable Reliance

■ Even if Mother's conduct induced Father to reasonably believe that his obligation to pay child support terminated, Father failed to show that he acted in justifiable reliance and that his acts caused injury. The trial court found that from June 1986 to January 1993, Father relied on the assumption that he no longer was obligated to pay child support, and therefore, had four children with his second wife. This finding is clearly erroneous because it is not supported by the evidence. Father testified that in 1982 he and his second wife had a baby on the way. He also testified that he had four children with his second wife. Thus, the

evidence shows that at least one of his four children in his second marriage was born before 1986. Nothing in the record indicates that Father relied on any act of Mother as an inducement to have children after 1986.

We conclude that the record lacks clear and compelling evidence to establish equitable estoppel as a bar to Mother's recovery of the child support arrearages that accrued from 1986 to 1993.

### 4. Laches

■ The trial court also applied the equitable defense of laches in finding that Mother waived the collection of child support arrearages that accrued between 1986 and 1993. In child support cases, the defense of laches requires that the support-paying, noncustodial parent show by clear and compelling evidence that the custodial parent unreasonably delayed bringing a claim for arrearages and that the noncustodial parent was prejudiced by the delay. *Dodd,* 181 Ariz. at 187–88, 888 P.2d at 1374–75 (finding mother's nine-year delay in pursuing claim for arrearages due to underpayment not unreasonable where mother believed father was financially unable to make full payment). A noncustodial parent is not relieved of his or her child support obligations merely because the custodial parent is dilatory in bringing a claim for support arrearages. *Baures v. Baures,* 13 Ariz.App. 515, 520, 478 P.2d 130, 135 (1970).

■ The trial court made no finding regarding whether Mother unreasonably delayed bringing her claim for arrearages. It found that she abandoned her claim for arrearages in part by failing to take any steps to collect child support. However, the trial court allowed recovery of arrearages that accrued between January 1980, and June 1986, even though Mother did not attempt to collect child support during that time. It would be inconsistent to find that no unreasonable delay existed in asserting a claim for arrearages for the first 6.5–year period, but that an unreasonable delay existed as to the claim for arrearages for the second 6.5–year period.

Additionally, courts in other jurisdictions have found that longer periods of delay did not bar recovery of child support arrearages. *See Carter v. Carter,* 611 A.2d 86, 87 (Me. 1992) (eleven-year delay); *McKellar v. McKellar,* 110 Nev. 200, 871 P.2d 296 (1994) (fourteen-year delay). *See generally* John C. Williams, Annotation, *Laches or Acquiescence as Defense, So as to Bar Recovery of Arrearages of Permanent Alimony or Child Support,* 5 A.L.R. 4th 1015 (1981).

■ Furthermore, Father failed to show that he was prejudiced by the delay. Father failed to show that he undertook any obligation that he would have forsaken if he had believed he was still required to pay child support. Father testified that he moved out of his old house and into a different house and that he believed the previous house was in foreclosure. However, Father did not testify that he lost the house to foreclosure as the result of the $560 wage assignment that was in effect for only two months before the trial court reduced it to $100 a month.

For the foregoing reasons, Father failed to show by clear and compelling evidence that the defense of laches applies to bar Mother's recovery of child support arrearages that accrued between 1986 and 1993.

### CONCLUSION

We conclude that the evidence is insufficient to support the defenses of waiver, estoppel, or laches. We reverse the portion of the trial court judgment that denied recovery of child support arrearages for June 1986 to January 1993. We remand for a determination of the amount of arrearages owed for that time period.

GRANT, J., concurs.

NOYES, Presiding Judge, dissenting.

Faced with a thirteen-year history in which the parties lived as though father was dead insofar as the children were concerned, the trial court found waiver by mother of some child support arrearage. The majority reverses and I would affirm because, in my opinion, the trial court's findings and conclusions are well-supported by the record, and they produce a more equitable and just re-

sult than has the majority. The trial court found as follows:

3. After leaving the Navy in 1980, the Petitioner stopped paying his child support obligation, stating that he was not getting visitation with his children. He remarried in 1981.

. . . . .

7. In 1986, the Petitioner received in the mail a Consent to Adopt Form, Exhibit 1, which the Petitioner signed and returned to the Respondent. The Consent to Adopt form was signed by the Petitioner on June 12, 1986. A pertinent part of the form reads:

**I understand that this consent is irrevocable and that I cannot change my mind; I am aware that consent to adoption cannot be withdrawn without a court order.... I hereby waive, and do not want, any notice of any further adoption and severance proceedings.**

. . . . .

9. Petitioner became aware that the adoption was not formalized when a wage assignment initiated by the State of Arizona went into effect in January 1993. After finding out that the children had not been adopted, the Petitioner then made contact with both children, and as a result of that contact, both children have since lived with the Petitioner for a period of time.

. . . . .

14. The Court finds that it is appropriate to apply the equitable defense of laches and/or equitable estoppel in finding that the Respondent waived her right to collect any arrears owing from the time the consent to adopt form was signed by the Petitioner to the time the Petitioner learned that the adoption had not been completed. The Court finds that there was an abandonment of the claim for arrearages by the custodial parent and/or there was prejudice to the party with the support duty. The Court finds that the Respondent initiated the adoption proceedings by having sent to the Petitioner the consent to Adopt form. **The Petitioner,**

**having signed the consent to adopt form, and having had no further contact with the Respondent and the children, reasonably assumed that the children had been adopted, and that he no longer was obligated to pay any child support. The Court finds that the Respondent failed to inform the petitioner that the adoption had not been completed and that he was still obligated to pay child support. From June, 1986 to January 1993, the Respondent took no steps to collect any child support.** During this time period, the Petitioner, relying on the assumption that he was no longer obligated to pay support, went on to have 4 children with his second wife. Once the wage assignment went into effect, due to financial difficulties, the Petitioner apparently lost his home in foreclosure and was forced to move elsewhere. The Respondent now alleges that the Petitioner owes her approximately $13,400 in child support arrears.

15. The Court finds this to be a similar fact situation as presented in *Cordova.* There the wife sent the ex-husband a letter stating that she no longer wanted support, and her new husband was going to adopt the children. In this case, the Petitioner signed a consent to adopt. The Court finds it reasonable that the Petitioner would assume that the children were adopted. Indeed, the language contained in the form would lead the Petitioner to assume that he would receive no further notices concerning the adoption. That coupled with the fact that neither the Respondent nor the children contacted the Petitioner, not did the Respondent initiate any court action to enforce and collect child support, the Court finds it reasonable that the Petitioner would rely on his assumption that his children had been adopted.

(Emphasis supplied.)

I am persuaded by the trial court's analysis. I will not nit-pick the majority's analysis but will discuss one example as illustrative of our differences. The trial court Finding No. 14, in part, was that "Respondent failed to inform the petitioner that the adoption had not been completed and that he was still

obligated to pay child support." The majority finds that: "[Petitioner] could have learned whether the adoption was final." *Supra* at page 29, 899 P.2d at page 190. The majority does not discuss the contents of the consent-to-adopt form that Respondent sent to Petitioner, in which Petitioner waived notice of any further adoption and severance proceedings. Thus, Respondent asked for and received Petitioner's waiver of further notice, but the majority suggests that Petitioner still had the burden of determining that Respondent went ahead with the adoption. Here, as in many other particulars, I think the trial court had a better view of the facts and, more importantly, a view that was supported by clear and compelling evidence.

There are some minor errors in the trial court findings. For example, Petitioner had at least one child before 1986, which means that he did not have four children after 1986. But the fact remains that Petitioner is now supporting four minor children and he has financial distress, as evidenced by losing his home. The money Petitioner now has to pay Respondent for their two now-adult children is to some extent taken away from his four still-minor children. Although the issue is complex, I respectfully suggest that the trial court made the best possible resolution of it.

I also find no error in the trial court's comparison of this case to *In re Cordova v. Lucero*, 129 Ariz. 184, 629 P.2d 1020 (App. 1981). There, the custodial mother wrote father a nasty letter advising that the children were going to be adopted by the new husband and that mother did not want any of father's support money and she did not want him near the children. *Id.* at 185, 629 P.2d at 1021. Father accepted these terms and, three and a half years later, he was sued for child support arrearage. *Id.* In affirming the trial court's finding that mother waived her right to the arrearage, this Court found that mother abandoned her claim because she wrote the letter, waited three and a half years while father relied on the waiver and made no payments, and she then "confronted [father] with a $6,000 arrearage claim, all to his financial prejudice." *Id.* at 186, 629 P.2d at 1022. In this case, Respondent sent Petitioner a consent-to-adopt letter, then waited

six and a half years before making a $13,400 arrearage claim. True, the consent-to-adopt letter did not, as in *Cordova*, contain nasty language announcing that mother did not want child support, but I agree with the trial court's implicit finding that the conduct of the parties in this case spoke louder and longer than the letter in *Cordova* and meant the same thing: clear and compelling evidence of waiver and abandonment of arrearages (following execution and return of the consent-to-adopt letter).

The majority finds support in *State v. Dodd*, 181 Ariz. 183, 888 P.2d 1370 (App. 1994), *supra* at 29, 899 P.2d at 190. I find that case quite distinguishable because there, "The parties were attempting throughout the time period at issue to resolve the support issue.... [T]he delay in pursuing [mother's] claim reflected her belief that the father was financially unable to make full payment and that she only sought arrearages when she learned of the father's improved financial circumstances." *Id.* at 188, 888 P.2d at 1375. Those facts are very different from the thirteen-year history in this case. I agree with the trial court's decision to hold father responsible for the first six and a half years of the arrearage; and I also think it fair to consider that long history as additional foundation for the conclusion that mother's solicitation and receipt of the consent-to-adopt letter, followed by another six and a half years of silence, was her waiver and abandonment of post-consent-letter arrearages.

I would affirm the trial court's effort to shape a just arrearage judgment out of the abnormal-but-acceptable-to-them way in which these parents dealt with their child support responsibilities for thirteen years.