931 P.2d 427

The STATE of Arizona and Cecilia L. Perez, Plaintiffs/Appellants,

v.

Miguel A. GARCIA, Defendant/Appellee.

No. 2 CA–CV 96–0057.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 10, 1996.

Stephen D. Neely, Pima County Attorney by Barbara Magee, Tucson, for Plaintiffs/Appellants.

Dunscomb & Shepherd, P.C. by Denise R. Shepherd and George A. Dunscomb, Tucson, for Defendant/Appellee.

## OPINION

ESPINOSA, Presiding Judge.

In this appeal, we consider whether the trial court properly applied the equitable doctrine of laches to bar the State of Arizona from enforcing its statutorily assigned right to seek child support arrearages for reimbursement of public aid provided for a dependent child. Plaintiffs/appellants Cecilia Perez and the State (appellants) assert the trial court erred in so ruling. They also challenge the trial court's finding that it was appellants' burden to establish the amount of past due support owed by appellee Miguel

Garcia and that they failed to sustain it. For the reasons set forth below, we affirm.

## Background

We view the evidence in the light most favorable to sustaining the trial court's findings, and will uphold them unless they are clearly erroneous or unsupported by any credible evidence. *Federoff v. Pioneer Title & Trust Co.*, 166 Ariz. 383, 803 P.2d 104 (1990). In 1977, Perez told Garcia she was pregnant with his child; she gave birth to a son, J, in January 1978. Shortly after J was born, Garcia, then 17, refused to marry Perez, believing he was not the child's father. Perez told him he would never see J again, and she and her family subsequently prevented any contact between Garcia and J, even though both families lived near one another on the same street.

In 1984, Perez applied for Aid to Families With Dependent Children (AFDC) benefits, naming Garcia as J's father and assigning all past due and future child support payments to the Arizona Department of Economic Security (DES), as required under A.R.S. § 46–407. DES contacted Garcia and he attended a meeting at the DES office.[1] Garcia heard nothing further from DES until the instant action was filed in March 1994. In the complaint, appellants alleged Garcia was the father of then sixteen-year-old J, and sought both past and future support. Based upon DNA test results indicating a 99.99% probability that Garcia is J's father, he was adjudicated J's natural father. After a two-day trial on support issues, the court awarded $1,640 support from March 15, 1994, the date the complaint was filed, until J's emancipation on November 15, 1994. The court refused to award arrearages, based on the doctrine of laches and appellants' failure to carry the burden of establishing the amount of arrearages. This appeal followed.

## Laches

 In child support cases, the defense of laches requires the noncustodial parent to

---

1. There is no indication in the record as to what transpired at the DES office or the purpose of the meeting.

show by clear and compelling evidence that the custodial parent unreasonably delayed bringing the claim for support arrearages and that the noncustodial parent was prejudiced by the delay. *Schnepp v. State*, 183 Ariz. 24, 899 P.2d 185 (App.1995); *State v. Dodd*, 181 Ariz. 183, 888 P.2d 1370 (App. 1994). Appellants first argue that because Perez delayed only six years before naming him as the father on her AFDC application and the State delayed a little more than nine years in bringing this action, Garcia failed to prove unreasonable delay. We disagree. No attempt was made by either Perez or the State to determine paternity or seek support for more than 16 years, even though Garcia lived across the street from Perez's family the entire time. *See Wigginton v. Commonwealth ex rel. Caldwell*, 760 S.W.2d 885 (Ky. App.1988) (laches barred support arrearages where mother took no action to determine paternity for 15 years); *Moore v. Hafeeza*, 212 N.J.Super. 399, 515 A.2d 271 (1986) (15-year delay in filing support complaint unreasonable). Indeed, not only did Perez never even contact Garcia, she lied to J about the identity of his father. Additionally, the State gave no explanation whatsoever for its protracted delay in taking any action.

■ Appellants contend, however, that Garcia failed to show he was prejudiced by the delay. The record reflects that Garcia is a self-employed scrap metal recycler. At the time of trial, he and his wife had five daughters and one son, all minors. They did not own a home and had no savings or retirement plan. Garcia testified he probably would have had fewer children had he known J was his son, explaining the cultural importance of a first born male child.[2] He further testified he would have tried to establish a relationship with J and support him, as evidenced by his adding J to his health insurance as soon as he received the test results and his visiting J at work a short while later. Garcia's wife testified that had they known

Garcia needed to provide support for J, they could have planned for it in their family budgeting decisions, and although she was not employed at the time of the hearing, she had worked outside the home when necessary.

Additionally, a DES employee admitted that many of the pertinent records regarding Perez's benefits had been purged and destroyed pursuant to normal DES record-keeping procedure. Although Perez received AFDC benefits through 1991, an incomplete statement listing payments Perez received from February 1985 through March 1987 did not indicate whether the benefits were received on behalf of J or on behalf of one of her other children.[3] Garcia's and Perez's financial records also have been lost, destroyed, or are incomplete due to the passage of time. Based on this evidence, we cannot say the trial court erred in finding Garcia prejudiced by the 16-year delay. *See Moore* (mother's 15-year delay prejudicial where father was denied right to develop relationship with child and incurred other financial obligations); *Burrow v. Vrontikis*, 788 P.2d 1046 (Utah App.1990) (seven-year wait unreasonable where father incurred numerous financial obligations and relied on mother's statement she wanted no contact with him and would raise child herself).

■ Appellants lastly argue that equitable defenses cannot be asserted against the State absent some affirmative misconduct on its part, citing *Mohave County v. Mohave-Kingman Estates*, 120 Ariz. 417, 586 P.2d 978 (1978). In that case our supreme court stated the principle that generally, equitable defenses may not be asserted against the state when exercising its governmental or sovereign functions. *Mohave County*, however, was a direct action for ejectment, quiet title, declaratory judgment and specific performance, not a derivative or third-party claim, as is the case here. Moreover, Arizona

---

2. Appellants assert this testimony was not credible because Garcia's youngest child was born more than a year after the DNA test confirmed Garcia's paternity. The credibility of witnesses, however, is primarily a matter for the trial court's determination, not ours. *City of Prescott v. Town of Chino Valley*, 166 Ariz. 480, 803 P.2d 891 (1990); *Ruvalcaba By and Through Stubble-*

*field v. Ruvalcaba*, 174 Ariz. 436, 850 P.2d 674 (App.1993).

3. Under A.R.S. § 46–408(A)(5), the state's assignment is limited to the amount of aid provided by the state for the child entitled to support.

courts have moved away from rules based on the notion that "the king can do no wrong," and toward balancing the "injustice that might result from the application of the rule ... against the effect that non-application would have on the state's effective exercise of its sovereignty and any resulting damage to the public interest." *Tucson Electric Power Co. v. Arizona Department of Revenue,* 174 Ariz. 507, 516, 851 P.2d 132, 141 (App.1992). *See also Freightways, Inc. v. Arizona Corporation Commission,* 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981) ("where the application of estoppel will not affect the exercise by the state of its governmental powers and sovereignty, ... estoppel will, when justice dictates, be applied to the state"). Contrary to appellants' assertion that egregious conduct is required, the state may be estopped "even 'when the government conduct complained of was in the form of inaction or silence.'" *State ex rel. Corbin v. Superior Court In and For Maricopa County,* 138 Ariz. 500, 503, 675 P.2d 1319, 1322 (1984), quoting Note, *Equitable Estoppel of the Government,* 79 Colum. L.Rev. 551, 560 (1979).

In this case, the public is certainly damaged by its having supported J while the State sat on its claim for over nine years and lost crucial records reflecting the amounts of AFDC benefits paid on behalf of Perez's children. On the other hand, application of laches under this, it is hoped, exceptional scenario does not unduly interfere with the State's ability to pursue child support arrearages in other cases, nor does it detract from the strong public policy of promoting the welfare of children. Added to this balance are the trial court's conclusions, with which we agree, that an award covering over 16 years in child support arrearages, with virtually no warning or previous opportunity for Garcia to honor or mitigate his obligation, would be "financially devastating" to him, "totally destructive" to his current family situation, and "do unfair harm" to the Garcias' minor children.

The case of *County of San Diego v. Green,* 167 Ariz. 624, 810 P.2d 622 (App.1991), also cited by appellants, does not suggest a contrary result. There, we found that the parental duty of support imposed by former A.R.S. § 12–2451 (now § 25–501) was enforceable by the public agency that had furnished support to Green's children even though the terms of his divorce decree precluded his former spouse from seeking arrearages. That the State has a remedy unavailable to the custodial parent does not preclude a parent obligated to pay child support from asserting a viable laches defense against the State. Accordingly the trial court did not err in finding appellants' claim for child support arrearages barred.

## Amount of Support Award

▪ Appellants also challenge as contrary to the evidence the trial court's findings regarding the parties' income, which was the basis of the support award. The record reflects that Garcia's gross income from his 1994 tax return was $15,005. The court divided that amount by 12 to determine his monthly income of $1,250. Based on Perez's testimony that she was paid $10 per hour and worked 40 hours per week, the court calculated her monthly income to be $1,720. We see no error in the trial court's basing its calculation on Perez's testimony instead of her "stipulated" tax return, particularly since appellants neither allege nor demonstrate any prejudice as a result. Furthermore, contrary to appellants' assertion, the trial court did include an amount for the medical insurance premiums that Perez paid. We find no error in the court's calculation of the amount of the award.

Given our resolution of the laches issue, we need not address appellants' remaining argument that the trial court erred in placing the burden of establishing the amount of past due support on appellants.

## Disposition

The judgment of the trial court is affirmed. Upon compliance with Ariz. R. Civ.App. P. 21, 17B A.R.S., appellee is awarded his attorneys' fees on appeal pursuant to A.R.S. § 12–849(E).

FLOREZ and HATHAWAY, JJ., concur.