968 P.2d 1053

**In re the MARRIAGE OF Francine Deborah YURO, Petitioner/Appellant,**

**and**

**Anthony Victor Yuro, Respondent/Appellee.**

**No. 2 CA–CV 97–0225.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 24, 1998.

**570**

Barbara LaWall, Pima County by Thomas J. Zawada, Tucson, for Petitioner/Appellant.

Law Office of Michael H. Gottesman by Michael H. Gottesman, Tucson, for Respondent/Appellee.

## OPINION

ESPINOSA, Judge.

¶ 1 This appeal involves a relatively straightforward child support collection action made complex by its long history and ensuing changes in state and federal child support laws, as well as concomitant questions of preemption and retroactivity. In June 1997, the Pima County Child Support Division filed on behalf of appellant, Francine Yuro, a resident of California, a request pursuant to Arizona's Revised Uniform Reciprocal Enforcement of Support Act (URESA),[1] formerly A.R.S. §§ 12–1651 through 12–1691,[2] to collect child support and spousal maintenance arrearages in the amount of $64,200.48, based on a 1985 California superior court order against respondent Anthony Yuro who now resides in Arizona. After a hearing, the trial court concluded that the doctrine of laches precluded Francine from enforcing the California order because she had accepted reduced payments under a 1988 New Mexico order resulting from a URESA action brought there on her behalf and had failed to seek other enforcement remedies or appeal the lesser amount of arrearages awarded by the New Mexico court. The trial court further found that the New Mexico order modified the 1985 California order and upheld its arrearage award of only $4,250.

¶ 2 On appeal, Francine argues that: (1) she cannot be bound by the New Mexico order because that court did not have personal jurisdiction over her; (2) the URESA action filed in New Mexico did not result in a modification of the 1985 California order; (3) the doctrine of laches is inapplicable; and (4) the 1985 California order established arrearages arising from a previous order of temporary support. We agree with the latter three arguments and therefore reverse and remand for further proceedings consistent with this decision.

### Facts and Procedural History

¶ 3 We view the evidence in the light most favorable to sustaining the trial court's findings and will uphold them unless they are clearly erroneous or unsupported by the evidence. *State v. Garcia*, 187 Ariz. 527, 931 P.2d 427 (App.1996). Upon their separation in October 1981, a California court ordered Anthony to pay Francine $380 per child per month in child support and $800 monthly spousal maintenance. In January 1982, Anthony moved to vacate the temporary order. The court granted the motion, found Anthony owed arrearages in the amount of $575, ordered him to pay $400 per month in child support, and postponed the issue of spousal maintenance until the time of trial. The parties entered into a dissolution agreement in March 1985, at which time the court ordered Anthony to pay $600 per month in child support, "commencing March 11, 1983." The court's order did not mention arrearages resulting from the 1982 temporary order.

¶ 4 In July 1986, the Los Angeles County Bureau of Family Support filed a URESA petition on behalf of Francine, seeking to enforce the 1985 child support order and payment of arrearages totaling $22,800. The complaint for support was forwarded to New Mexico, where Anthony was then residing,

---

1. We note that the Uniform Reciprocal Enforcement of Support Act (URESA), 9B U.L.A. 553 (1987), originally adopted in 1950, was revised in 1968 (RURESA). 9B U.L.A. 381 (1987).

2. Sections 12–1651 through 12–1691, A.R.S., constituted the Revised Uniform Reciprocal Enforcement of Support Act, and were renumbered

as §§ 25–551 through 25–591. 1996 Ariz. Sess. Laws, ch. 192, § 11. That act was subsequently repealed, 1997 Ariz. Sess. Laws, ch. 219, § 27, leaving the Uniform Interstate Family Support Act (UIFSA), A.R.S. §§ 25–621 through 25–661, as Arizona's interstate enforcement of support mechanism.

and he was served in October 1986. Anthony did not answer the complaint or otherwise appear and in September 1988, the New Mexico court entered a default judgment against him, ordering him to pay $450 per month in child support and arrearages in the amount of $4,250.[3] There was nothing in the order or otherwise as to whether the 1985 California order was being modified or superseded.

¶ 5 In March 1997, after Anthony had relocated to Arizona, Francine registered the California support order in Pima County pursuant to A.R.S. § 25–586, seeking all arrearages resulting from the two California orders entered in 1982 and 1985. Pima County Attorney Child Support Services filed a request in superior court to enforce the California order on her behalf in June 1997 pursuant to Arizona's former URESA statutes. As noted above, after an evidentiary hearing the trial court found that the 1985 California order failed to establish arrearages resulting from the temporary order, the New Mexico court's order effectively modified the 1985 California order, and Francine's action was barred by laches. This appeal followed.

### Discussion

¶ 6 Francine argues that the trial court erred because the issue of modification was never before the New Mexico court and, in any event, its order did not comply with URESA requirements for modifying the California order.[4] Anthony responds that the California order was effectively modified by the New Mexico court, and that Arizona lacks subject matter jurisdiction "to resolve a conflict between the courts of two sister states." Anthony is patently wrong about the latter point. Arizona's Uniform Interstate Family Support Act (UIFSA) authorizes Arizona's courts to enforce support orders from other states when registered under its provisions, *see* A.R.S. § 25–648,

and expressly sets forth procedures for dealing with competing support orders in A.R.S. § 25–628. Thus, in determining which child support order Arizona should recognize as controlling, we first look to our own law.

■ ¶ 7 Arizona has adopted and replaced URESA with the Uniform Interstate Family Support Act (UIFSA).[5] A.R.S. §§ 25–621 through 25–661. Although that act became effective June 30, 1995, it provides that if, subsequent to that date, a case is received from a state that had not yet enacted and implemented UIFSA, Arizona's URESA, even though repealed, should be applied. 1993 Ariz. Sess. Laws, ch. 143, § 4. Because California had not enacted and implemented UIFSA at the time the petition was filed in Arizona, we would have utilized URESA to determine which order is controlling. *See* A.R.S. tit. 25, art. 4 (table of jurisdictions wherein act has been adopted). We cannot do so, however, without considering the intervening Congressional enactment of the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C.A. § 1738B. In an attempt to bring uniformity to the laws regarding interstate child support enforcement, Congress enacted FFCCSOA which, as a federal statute, preempts all similar state laws pursuant to the Supremacy Clause of the United States Constitution. U.S. Const. art. VI. *See State Dept. of Rev. v. Skladanuk*, 683 So.2d 624 (Fla.App.1996) (modification of support obligation pursuant to URESA preempted by FFCCSOA); *see also In re Marriage of Comer*, 14 Cal.4th 504, 59 Cal.Rptr.2d 155, 927 P.2d 265 (Cal. 1996). We must therefore first determine whether the FFCCSOA, enacted in 1994, applies retroactively to a purported modification entered in 1988 under URESA. If it does, we are bound to apply FFCCSOA in

---

3. There is no indication in the record or in the judgment as to how the court calculated the arrearages.

4. Francine also challenges the New Mexico court's order on the ground it lacked *in personam* jurisdiction over her. This is a clearly untenable argument, however, under both New Mexico

and Arizona law. *See Natewa v. Natewa*, 84 N.M. 69, 499 P.2d 691 (N.M.1972); *Ibach v. Ibach*, 123 Ariz. 512, 600 P.2d 1375 (App.1979).

5. All states were required to adopt UIFSA, 9 U.L.A. 255 (Supp.1996), by January 1, 1998, by virtue of 42 U.S.C.A. § 666(f).

determining whether the New Mexico order modified the 1985 California order.[6]

### A. *Retroactivity of FFCCSOA*

¶ 8 In *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that an appellate court must apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. The following factors are considered in determining whether manifest injustice would result in the retroactive application of a statute: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the impact of the change in law upon those rights. *Id.* The first factor suggests that injustice could result when the litigation involves private cases between individuals. The Supreme Court recognized, however, that in certain circumstances retroactive application may be justified to promote expeditious implementation of the law, particularly when it is one involving a compelling national concern. *Id.*

¶ 9 Although the instant action is between private individuals, at issue is a matter that has caused Congress sufficient concern to prompt it to promulgate legislation in an area traditionally regulated by the states. Congress enacted FFCCSOA to "facilitate the enforcement of child support orders among the States; ... discourage continuing interstate controversies over child support ... and ... avoid jurisdictional competition and conflict among State courts in the establishment of child support orders." *Congressional Findings and Declaration of Purpose*, 28 U.S.C.A. § 1738B, Pub.L. No. 103–383 § 2; *see also Day v. Child Support Enforcement Div.*, 272 Mont. 170, 900 P.2d 296 (Mont.1995) (lack of uniformity in laws regarding support orders encouraged noncustodial parents to relocate to avoid jurisdiction of home state resulting in relitigation of cases and increased AFDC because of low levels of child support payments in interstate cases). In light of the purpose of FFCCSOA and its nation-wide scope, we conclude the private nature of this case is of no consequence.

¶ 10 Under the second factor, we consider whether retroactive application of FFCCSOA would deprive either party of a matured or unconditional right. *Bradley.* Although neither party has raised this issue,[7] Anthony has argued that because Francine accepted his reduced payments and failed to appeal the New Mexico order, he had a right to rely on that order. There is nothing in the record, however, to suggest that Francine ever agreed to accept the lower amount in lieu of the higher amount or that the New Mexico order actually modified the 1985 California order. *See In re Marriage of Ward*, 29 Cal.App.4th 1452, 35 Cal.Rptr.2d 32 (App. 1994) (acceptance of decreased payments not evidence of agreement and reliance on mere acceptance of such payments unreasonable). There appears in the record no other potential deprivation of a right held by either party.

¶ 11 The final factor involves the "possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2021, 40 L.Ed.2d at 493. That is not the case here. Whether we apply URESA or FFCCSOA, Anthony is faced with the same obligations and has exercised his right to be heard. We therefore conclude that utilizing FFCCSOA would not work a manifest injustice on either party.

### B. *Application of FFCCSOA*

¶ 12 Section 1738B(f)(2), 28 U.S.C.A., provides that when two or more child support orders have been issued with respect to an obligor and a child, a court must recognize the order from the court with continuing, exclusive jurisdiction. A court has continuing, exclusive jurisdiction over an

---

**6.** We need not distinguish between arrearages and ongoing support as FFCCSOA and UIFSA apply to both. *See 28* U.S.C.A. § 1738B(b) and A.R.S. § 25–621(21).

**7.** Indeed, the parties have argued and directed this court only to the repealed provisions of URESA, without mentioning the controlling laws referred to herein and their impact on subject matter jurisdiction.

order if the state in which that court sits is the residence of the child or of any individual contestant and the order has not been modified by the court of another state. § 1738B(d). Pursuant to § 1738B(e), a court in another state may modify a support order only if the issuing state is no longer the residence of the child or any other individual contestant, or each individual has filed written consent with the issuing state for the court of another state to modify the existing order and assume continuing, exclusive jurisdiction over the order. Because there is no evidence that Francine and her children no longer resided in California or that Francine had filed written consent for New Mexico to modify the California order, New Mexico lacked the authority to modify the 1985 California order which, therefore, must be recognized and enforced. *Skladanuk.*[8]

## C. Laches

¶ 13 Anthony argues that even if the California order has not been modified or otherwise superseded, Francine is barred from enforcing it under the doctrine of laches. Laches will bar the collection of arrearages only upon a showing by clear and compelling evidence that the obligee unreasonably delayed bringing a claim for arrearages, and the obligor was prejudiced by this delay. *Garcia; Schnepp v. State ex rel. Dept. of Economic Security*, 183 Ariz. 24, 899 P.2d 185 (App.1995).

¶ 14 Anthony contends that Francine delayed unreasonably by waiting over eight years, after her financial situation had deteriorated, before initiating the present action. We disagree for several reasons. First, that Francine did not take further steps to enforce arrearages during the period after the New Mexico court entered its default judgment is not, in and of itself, evidence of unreasonable delay. Indeed, courts in other jurisdictions have found that longer periods

of delay did not bar recovery of child support arrearages. *See Carter v. Carter*, 611 A.2d 86 (Me.1992) (eleven-year delay); *McKellar v. McKellar*, 110 Nev. 200, 871 P.2d 296 (Nev.1994) (fourteen-year delay). Francine testified that after she learned Anthony resided in New Mexico, it was only through "[c]onstant telephone communications" and "20 case workers" that she was finally able to obtain an address for him. Even when she located him and contacted the New Mexico authorities directly, they declined to take any action and required that California intervene on her behalf. She testified it was not until "two, maybe three, maybe four" years after she located Anthony that the URESA action was initiated by the California family support bureau and filed in New Mexico.

¶ 15 Second, nothing in the record suggests Francine had any reason to repeatedly petition the New Mexico court for arrearages. During the eight years Anthony was in New Mexico, he apparently did not work but was supported by a woman friend; there is no indication that his circumstances had changed so as to warrant the filing of additional petitions.

¶ 16 Third, it was not until 1988, two years after the petition was filed, that the New Mexico court provided Francine with notice of the default judgment and, according to her testimony, a "financial statement" which said, "[t]his is all he can afford for right now." Francine testified she believed the amount ordered by the New Mexico court was temporary because of Anthony's financial situation at that time and, therefore, arrearages were still accruing. In light of these facts, we cannot agree with the Arizona trial court's implicit finding that Francine's lack of action was unreasonable.

¶ 17 Assuming, arguendo, that Francine's delay was unreasonable, Anthony has failed to demonstrate prejudice. He con-

---

8. We note the result would be no different under URESA and the antinullification statute in effect in New Mexico at the time of the default judgment because the New Mexico court did not "otherwise specifically provide" for modification of the 1985 California decree. N.M. Stat. Ann. § 40–6–23 (1978); *see White–Nathan v. Nathan*, 181 Ariz. 112, 888 P.2d 237 (App.1994). Nor is

there evidence that Francine registered the support order in New Mexico. Moreover, the arrearages became vested when due and were therefore considered a final judgment entitled to full faith and credit. *See Harding v. Sutherlin*, 120 Ariz. 193, 584 P.2d 1184 (App.1978); *Jarvis v. Jarvis*, 27 Ariz.App. 266, 553 P.2d 1251 (1976).

tends that because Francine failed to appeal the New Mexico order and accepted his payments, she "effectively conveyed the message that, in 1988, she agreed that the correct tally of back support owed was $4,250.00 and that the new monthly obligation ordered modified the previous decree." Anthony, however, has not shown that Francine ever agreed to accept the lower amount in lieu of the higher amount.[9] *See Ward* (acceptance of decreased payments not evidence of agreement and reliance on the mere acceptance of such payments unreasonable). Furthermore, the record does not reveal that Anthony "undertook any obligation that he would have forsaken if he had believed he was still required to pay child support." *Schnepp*, 183 Ariz. at 30, 899 P.2d at 191; *see also Carter*; *cf. Garcia* (father testified had he known of paternity and support obligation to first child, he would have had fewer additional children). Nor did Anthony allege or show any change in his financial position, or otherwise, since the date of the New Mexico order. Although he complains that as a result of Francine's delay he now owes a substantial amount in "compounded interest," he has not demonstrated that he changed his position in reliance on the judgment or that he has been placed in a detrimental financial position, only that he now may owe more money. *See generally Beltran v. Razo*, 163 Ariz. 505, 788 P.2d 1256 (App.1990). A mere allegation of prejudice is not enough. We therefore conclude that the doctrine of laches was not a defense to Francine's action, and the trial court erred in so finding.

## D. *Retroactive modification*

¶ 18 Finally, Francine argues that the 1985 California order established arrearages because the court had ordered child support payments as of March 1983. Anthony responds that the order erroneously effected a retroactive modification and, therefore, no arrearages are due under that order.

¶ 19 When Francine and Anthony's dissolution action was entered in 1985, Cal. Civ.

Code § 4357 (West 1983), provided in pertinent part:

(a) During the pendency of any [separation or dissolution] proceeding, the superior court may order the husband or wife, or father or mother ... to pay any amount that is necessary for the support and maintenance of the wife or husband and for the support ... of the children.... Any such order may be modified or revoked at any time except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke.

(b) ... orders for child support entered pursuant to this section remain in full force and effect until revoked by the court or until the order terminates by operation of law pursuant to Section 4700 [order of support entered as result of dissolution decree].

Accordingly, the 1985 California decree could not have retroactively modified the 1982 temporary order. *See Hangen v. Hangen*, 241 Cal.App.2d 11, 50 Cal.Rptr. 203 (App.1966); *Scarlett v. Scarlett*, 151 Cal.App.2d 237, 311 P.2d 188 (Cal.App.1957). However, the fact that the decree did not specifically mention arrearages owing at the time the decree was entered does not compel the conclusion that none were due. The trial court did not have the power to reduce the amount of child support which had already accrued and was due. *Hangen*; *Scarlett*. Under § 4357(b), temporary child support orders remain in effect until otherwise terminated. Here, after the parties entered into a dissolution agreement and a new child support order was entered based on the dissolution proceedings, the temporary order was effectively terminated but arrearages were unaffected. Therefore, although the 1985 order could not retroactively modify arrearages, any due under the temporary order were not extinguished and remain valid.

---

9. Francine testified she accepted Anthony's payments because she needed any amount of money available and was advised by California authorities to "[t]ake it, whatever you can get."

**Disposition**

¶ 20  We reverse and remand with instructions to the trial court to calculate the proper amount of arrearages due under the 1982 temporary order and 1985 final decree.[10]  The parties shall bear their own attorneys' fees on appeal.

BRAMMER, P.J., and HOWARD, J., concur.

10.  We are unable to determine how Francine arrived at her figure but it appears to be excessive.  We therefore instruct the trial court to conduct an accounting of Francine's claimed arrearages, consistent with this decision.