979 P.2d 529

In re the PATERNITY OF: Zachary GLORIA, A Minor,

State of Arizona, ex rel. the Department of Economic Security, (Theresa Gloria), Petitioner–Appellants, Cross Appellee,

v.

Matthew Vallejo, Respondent– Appellee, Cross Appellant.

No. 1 CA–CV 97–0619.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 15, 1998.

Redesignated as Opinion Feb. 4, 1999.

Janet A. Napolitano, Attorney General by Judith C. Darknall, Assistant Attorney General, Attorneys for Appellants, Cross Appellees.

Phoenix Rose & Hildebrand, P.C. by David L. Rose Matthew M. Nicely Phoenix, Attorneys for Appellee, Cross Appellant.

## OPINION

VOSS, Judge.

¶ 1 In this appeal, we consider whether evidence was presented to establish that appellant unreasonably delayed the attempt to collect child support arrearages from appellee such that the doctrine of laches prevented an award for past support. We conclude that no such evidence was presented because no opportunity was given for such evidence to be introduced. Therefore, we reverse the denial of appellant's motion for new trial and remand for further proceedings. We dismiss the cross appeal for lack of jurisdiction.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In February 1986, Theresa Gloria bore a child (the child) out of wedlock. Gloria began receiving Aid for Families with Dependent Children (AFDC) benefits from the Arizona Department of Economic Security (the State or DES) when she was pregnant with the child. When she applied for benefits, she named her ex-boyfriend, Vince Pudiquet, as the child's father based on the due date given her by her doctor. At that time, Gloria did not know Pudiquet's whereabouts, but she knew that he was from Hawaii and that he had left Arizona. At some later time, she tried to locate him by consulting Hawaii telephone books, but was unsuccessful. Pudiquet subsequently was located, and, in about 1993, blood tests proved he was not the father of the child.

¶ 3 Gloria then realized that appellee Matthew Vallejo must be the child's father. She knew Vallejo had worked in the financial aid office at Mesa Community College in 1985 when she met him. She could not remember his last name, but eventually learned it from a mutual friend. In the spring of 1994, she saw him at a store; apparently, she did not speak to him, but waited and got his license plate number when he left the store and got into his car. She subsequently provided that number to the State. She provided Vallejo's name to the State in September 1995. On November 30, 1995, the State notified Vallejo that Gloria had named him as the child's father. Genetic blood testing done in 1996 determined that Vallejo was the child's father, and Vallejo did not contest paternity.

¶ 4 Once an order of paternity was entered, the State brought an action seeking current and past child support. The parties stipulated to current support. However, Val-

lejo contested past support, arguing that Gloria unreasonably delayed bringing a claim for arrearages and thus was barred by laches from obtaining past support. He asked the trial court to make findings of fact and conclusions of law under Rule 52(a), Arizona Rules of Civil Procedure.

¶ 5 The trial court concluded that laches barred Gloria from receiving past support other than an amount, not to exceed $14,648, that she had assigned to the State in order to receive AFDC benefits. The court ruled that under *Mohave County v. Mohave–Kingman Estates, Inc.*, 120 Ariz. 417, 586 P.2d 978 (1978), the defense of laches could not apply to the State in matter s affecting governmental or sovereign functions.

¶ 6 Vallejo moved for reconsideration, noting that in the recently decided *State v. Garcia*, 187 Ariz. 527, 931 P.2d 427 (App. 1996), the court held that the equitable defense of laches could be applied against the State in child support arrearages cases in which the State was filing a derivative or third-party claim. He asked the trial court to reconsider its order and void the State's judgment against him. He also requested an award of his attorneys' fees under A.R.S. § 25–809(E).

¶ 7 Without taking any additional evidence, the trial court concluded that the State was barred by laches from collecting any past support that accrued prior to November 1995, when the State first notified Vallejo that he might be the child's father. Because Gloria had last received AFDC benefits for the child in February 1993, the court denied judgment against Vallejo for past support. The court made no findings of fact or conclusions of law concerning its new ruling.

¶ 8 The State moved for a new trial, arguing that the court's ruling that the State was barred from obtaining past support was unsupported by the findings of fact and conclusions of law in its prior decision, and thus was not supported by clear and compelling evidence. The court denied the motion for new trial.

¶ 9 On July 17, 1997, the State appealed from the establishment judgment and order and from the denial of its motion for new trial. However, the notice of appeal did not get docketed in the court clerk's office, even though a computer entry in the clerk's cash system indicated that the State's notice of appeal had been filed. Therefore, on October 8, 1997, the court ordered that the clerk accept for filing as the original notice of appeal the date-stamped copy obtained by the State when it filed the original notice. Gloria did not appeal from the judgment.

¶ 10 On October 27, 1997, Vallejo filed a notice of cross appeal in which he purportedly appealed from the portion of the judgment denying his request for attorneys' fees. However, the establishment judgment and order did not contain any mention of attorneys' fees, and the trial court had not yet ruled on Vallejo's fee request at the time he filed his notice of cross appeal. In fact, the trial court vacated the oral argument on the fees request upon its receipt of the notice of cross appeal.

## DISCUSSION

### A. Appeal Issues

¶ 11 The State argues that the trial court's conclusion that laches bars the State's reimbursement claim is contrary to law and not supported by the evidence. According to the State, Vallejo failed to meet his burden of showing by clear and compelling evidence that the State unreasonably delayed in bringing the paternity action and that he suffered prejudice from the delay. The State also asserts that Vallejo did not show that the injustice a reimbursement judgment would inflict on him outweighed the harm the public would suffer if the award were not made.

¶ 12 Vallejo responds that the State, as assignee, stands in the position of Gloria and thus must be barred from recovery under the doctrine of laches. Furthermore, Vallejo argues, the State itself unreasonably delayed bringing a claim for arrearages against him, and he showed that he was prejudiced by the State's delay.

¶ 13 Laches is a form of estoppel that applies when the party asserting the defense shows that, because of delay or lapse of time, he/she is injured or has changed position in reliance on the other party's inaction. *Jerger v. Rubin,* 106 Ariz. 114, 117, 471

P.2d 726, 729 (1970). The delay must come after the party against whom the defense is asserted has knowledge of his/her right. *Id.* Laches may not be attributed to a party for mere delay in assertion of a claim; rather, the delay must be unreasonable under the circumstances and result in prejudice to the other party sufficient to justify denial of relief. *Flynn v. Rogers,* 172 Ariz. 62, 66, 834 P.2d 148, 152 (1992).

¶ 14   In Arizona, the equitable defense of laches may be applied in child support cases if the support-paying, noncustodial parent shows by clear and compelling evidence that the custodial parent unreasonably delayed bringing a claim for arrearages, and that the noncustodial parent was prejudiced by the delay. *Schnepp v. State ex rel. Dep't of Econ. Sec.,* 183 Ariz. 24, 30, 899 P.2d 185, 191 (App.1995); *State ex rel. Dep't of Econ. Sec. v. Dodd,* 181 Ariz. 183, 187–88, 888 P.2d 1370, 1374–75 (App.1994). The defense of laches also may be asserted against the State to prevent it from recovering arrearages from a noncustodial parent to reimburse the State for AFDC benefits paid on behalf of his/her children. *Garcia,* 187 Ariz. at 529–30, 931 P.2d at 429–30.

¶ 15   As Vallejo notes, ordinarily an assignee cannot stand in a better position than the assignor. *See Stephens v. Textron, Inc.,* 127 Ariz. 227, 230, 619 P.2d 736, 739 (1980); *Business Fin. Servs., Inc. v. Butler and Booth Dev. Co., Inc.,* 147 Ariz. 510, 512, 711 P.2d 649, 651 (App.1985). However, although that may be a true statement in contract law, we conclude that, in a child support action involving the defense of laches against the State, the party asserting the defense must prove the required elements of laches against the State itself.

¶ 16   In *Garcia,* the court clearly examined the conduct of the State to determine whether laches applied against it. Applying laches to bar recovery to the State for AFDC benefits paid, the court noted that "the State sat on its claim for over nine years and lost crucial records reflecting the amounts of AFDC benefits paid." *Garcia,* 187 Ariz. at 530, 931 P.2d at 430. The *Garcia* court also concluded that egregious conduct by the State was not required for laches to apply; instead, the State could be estopped "even

'when the government conduct complained of was in the form of inaction or silence.' " *Id.,* citing *State ex rel. Corbin v. Maricopa County Superior Court,* 138 Ariz. 500, 503, 675 P.2d 1319, 1322 (1984), quoting Note, Equitable Estoppel of the Government, 79 Colum. L. Rev. 551, 560 (1979). Thus, the *Garcia* court did not apply laches against the State based solely on the mother's delay in seeking support arrearages. Rather, it found that the actions of the State independently supported the application of laches against the State.

¶ 17   The *Garcia* court indicated that the effect on the State if laches is applied against it must be balanced against the damage to the party against whom support arrearages are sought if laches is not applied. 187 Ariz. at 530, 931 P.2d at 430. In *Garcia,* for example, the court believed that application of laches would not "unduly interfere with the State's ability to pursue child support arrearages in other cases, nor [would it] detract from the strong public policy of promoting the welfare of the children." *Id.* On the other hand, said the court, an award of 16 years of child support arrearages against the father would financially devastate him and "do unfair harm" to the children in his new family. *Id.* Thus, the court affirmed the application of laches against the State. *Id.*

¶ 18   In the case before us, no evidence was presented below to show that the State unreasonably delayed bringing the action against Vallejo. The application of laches against the State was not pursued at the hearing on child support arrearages because the common law at that time did not allow laches to apply against the State. No further evidence was taken when Vallejo filed his motion for reconsideration.

¶ 19   The evidence to support the application of laches against Gloria does not answer the question whether the State itself unreasonably delayed bringing the support action against Vallejo. For example, a number of pertinent questions were not addressed: did the State wait until 1993 to find Pudiquet, thus delaying the ultimate determination that Vallejo is the child's father; under what circumstances and by whom was Pudiquet found; what efforts did the State make to find him; once Pudiquet was determined not

to be the father, what efforts did the State make to find the father? The answers to these questions, and others, were not developed in the trial court but are necessary to determine whether laches should be applied against the State.

¶ 20 Vallejo cannot simply argue that evidence of Gloria's inaction supports laches against the State because he has the burden of showing by clear and compelling evidence that laches bars the collection of child support arrearages from him. There is no such clear and compelling evidence as to the State in the record. Adequate evidence appears to be lacking because no opportunity to develop such evidence was available. Therefore, we conclude that the trial court erred in denying the motion for new trial, and we remand for further proceedings on the question whether laches should apply against the State based on its own actions or inaction, on prejudice suffered by Vallejo as a result of the delay, and on a balancing of the effects on the State and Vallejo if laches is or is not applied.

### B. Cross Appeal Issues

¶ 21 In his cross appeal, Vallejo argues that the trial court should have awarded him his attorneys' fees incurred in the trial court and his attorneys' fees in advance to defend this appeal. He notes that the court never ruled on his requests.

¶ 22 We conclude that we do not have jurisdiction over the cross appeal. First, it appears that the notice of cross appeal was untimely filed. The State filed its notice of appeal on July 17, 1997, but the original notice did not make it into the trial court record. The order entered by the court on October 8, 1997 directs the court clerk to file the date-stamped copy of the notice of appeal as the original, but apparently it did not change the date of the filing of the notice to October 8. The mailing affidavit on the notice of appeal indicates that a copy of the notice was mailed to Vallejo's attorney on July 17, 1997, and he has not contended that he did not receive it at that time. Therefore, the notice of cross appeal filed on October 27, 1997 apparently was untimely.[1] We do not have jurisdiction when an appeal is untimely filed. *Matter of Appeal in Pima County Juv. Action No. S–933*, 135 Ariz. 278, 279, 660 P.2d 1205, 1206 (1982). Rules governing appeals are also applicable to cross appeals. *Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 394, 573 P.2d 80, 85 (App. 1977).

¶ 23 However, even if the timeliness of the filing of the notice of cross appeal is unclear, we lack jurisdiction over the cross appeal for an even more fundamental reason—there is no order denying Vallejo's attorneys' fees requests from which he could appeal because, by Vallejo's own admission, the trial court never ruled on his requests. In fact, the court vacated oral argument on Vallejo's requests once he filed his cross appeal. Neither of the signed orders mentions attorneys' fees.

¶ 24 The State argues that, by not ruling on Vallejo's requests for attorneys' fees, the trial court denied them by implication as part of its final judgment on March 26, 1997. See *Pearson v. Pearson*, 190 Ariz. 231, 237, 946 P.2d 1291, 1297 (App.1997). Vallejo requested an award of fees incurred in the trial court in his motion for partial reconsideration filed on January 23, 1997; thus, the court may have impliedly denied his request by not including an award of fees in the March 26th judgment. However, on October 1, 1997, Vallejo filed a motion for ruling on his previous request for attorneys' fees and a motion for an award of attorneys' fees on appeal. Oral argument on those motions was vacated. At that point, the trial court could have stated that it had denied the previous request for attorneys' fees by not including an award in the judgment, but it did not do so. Therefore, there is no ruling, either express or implied, on the attorneys' fees requests.

¶ 25 The appellate court has only the jurisdiction the legislature gives it. *Hanania v. City of Tucson*, 123 Ariz. 37, 38, 597 P.2d 190, 191 (App.1979). It is clear from A.R.S. § 12–2101 that a final order or judgment must exist before an appeal can be

---

1. The notice of cross appeal states that Vallejo appeals "from that portion of the judgment denying his request for attorney's fees to defend the action brought against him by the State entered on October 8, 1997, in his favor." However, the October 8 order merely directs the filing of the date-stamped copy of the notice of appeal; it says nothing about either an attorneys' fees award or any order in Vallejo's favor.

taken. Because no order or judgment denying attorneys' fees exists, we do not have jurisdiction over the cross appeal. Accordingly, we dismiss it.

### C. Attorneys' Fees Request

¶ 26 Vallejo requests an award of his attorneys' fees on appeal under A.R.S. § 25–809(E),[2] which allows the court to make a discretionary award of fees for maintaining or defending a proceeding after considering the financial resources of both parties. In the exercise of our discretion, we deny Vallejo his attorneys' fees incurred on appeal.

¶ 27 Because the State is the prevailing party on appeal, it is entitled to an award of its costs incurred on appeal, upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

CECIL B. PATTERSON, JR., Judge, and SUSAN A. EHRLICH, Judge, concur.

---

**2.** Amended and renumbered as A.R.S. § 25– 809(G).