386 P.3d 411

In re the Matter of: Lauren M. JENSEN,
Petitioner/Appellee,

v.

Peter Damien Joseph BEIRNE,
Respondent/Appellant.

No. 1 CA–CV 15–0802 FC

Court of Appeals of Arizona,
Division 1.

FILED 12/6/2016

Lauren M. Jensen, Scottsdale, Petitioner/Appellee

The Murray Law Offices PC, Scottsdale, By Stanley David Murray, Counsel for Respondent/Appellant

Judge Jon W. Thompson delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Edward W. Bassett [1] joined.

## OPINION

THOMPSON, Judge:

¶ 1 Peter Damien Joseph Beirne (Beirne) appeals from the family court's dismissal of his petition to enforce orders affecting real property stemming from a 2005 marriage dissolution decree.[2] For the following reasons, we reverse the court's ruling.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The marital union of Beirne and Lauren M. Jensen (Jensen) was dissolved by decree entered in June 2005. The decree distributed several real properties between the two parties. Two properties acquired as community property, but awarded to Beirne as his separate property, a "Unit 1103" in Scottsdale, Arizona, and the "Hadley Highstone Property"[3] in England, United Kingdom, are the subjects of this appeal. The decree ordered Beirne to refinance the mortgages on the two properties in his name only within 90 days. Beirne failed to do so.

¶ 3 Due to Beirne's failure to refinance the mortgages, in December 2005, the court ordered that Jensen "may place the Hadley Highstone and Unit ... 1103 properties for sale, and that she has the first right of refusal to purchase them for their fair market value[,]" in accordance with the June 2005 decree.[4] The proceeds from the sale of both properties would go to Beirne, with reimbursement to Jensen for mortgage and maintenance payments.

¶ 4 In a minute entry filed in early January 2006, *without specifying who should do*

*the selling*, the court ordered that both properties be sold, with Jensen having the right of first refusal to purchase both. At a March 2007 emergency hearing related to other matters, the parties informed the court of various reasons the two properties remained unsold. The court ordered the appointment of a special real estate commissioner to sell Unit 1103.

¶ 5 The special real estate commissioner requested an evidentiary hearing in April 2008 after he was unable to list Unit 1103 for sale. At the evidentiary hearing, which took place in May 2008, the court ordered: (i) the sale of Unit 1103 be *completed to Jensen*; (ii) that the clerk of the court's office sign papers on Beirne's behalf if he did not cooperate in the sale of the unit to Jensen; and (iii) that Jensen shall be reimbursed to the extent she "continues to pay the mortgage on the house until its [sic] sold."

¶ 6 No other action to enforce the court's decree or any of the subsequent orders regarding the two properties occurred until Beirne filed the subject petition in July 2015. In his petition Beirne alleged that, to his knowledge, Jensen had made no effort to list the Hadley Highstone Property for sale. He requested that the court order Jensen to pay him "an amount equal to the current equity in the property" and he would, in return, deed his interest to her. He also argued that he could not refinance Unit 1103 because Jensen refused to sign over her interest. He requested that the court order Jensen to execute a quitclaim deed transferring her interest in Unit 1103 to him, proffering that he would thereafter refinance the property in his name only.

¶ 7 The court held a hearing on Beirne's petition on October 7, 2015. Both parties were present. At that hearing, the court ordered Jensen to sign a quitclaim deed for

---

1.  The Honorable Edward W. Bassett, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

2.  Lauren M. Jensen did not file an answering brief in this appeal.

3.  The Hadley Highstone Property is titled and mortgaged in Jensen's name.

4.  As to both properties, the June 2005 decree stated: "should Husband not be able to refinance, [the property] shall be placed on the market for sale. In the event of a sale, Wife shall have the first right of refusal to purchase the property for the fair market value."

Unit 1103 and return it to the court by October 14, 2015. The court further ordered that Beirne refinance Unit 1103, removing Jensen's name from it, no later than January 15, 2016. Jensen stated she wanted to assert her right of first refusal to buy the Hadley Highstone Property. At the end of the hearing, the court took the matter under advisement due to time constraints.

¶ 8 On October 13, 2015, the court issued a minute entry vacating the relief it granted to Beirne at the October 7 hearing as to Unit 1103, and dismissing Beirne's petition in its entirety, with prejudice. The court ruled it lacked the power to enforce the decree and related orders because Beirne's petition was time-barred. Beirne timely appealed that decision to this court. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and pursuant to Arizona Revised Statutes (A.R.S.) §§ 12–120.21(A)(1) (2016) and –2101 (2016).[5]

**DISCUSSION**

■■■ ¶ 9 The court held it lacked the power to enforce the orders because more than five years had elapsed since their entry and neither party had renewed them pursuant to A.R.S. § 12–1551 (2016), and *Johnson v. Johnson*, 195 Ariz. 389, 988 P.2d 621 (App. 1999) (applying A.R.S. § 12–1551).[6] We examine the applicability of A.R.S. § 12–1551 de novo. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178, ¶ 5, 181 P.3d 219, 225 (App. 2008) (stating we review de novo questions of law regarding statute of limitations and the superior court's statutory interpretation); *Occhino v. Occhino*, 164 Ariz. 482, 484, 793 P.2d 1149, 1151 (App. 1990) (stating whether a particular statute of limitations applies to any given action is a matter of law).

¶ 10 We hold the statute of limitations the court relied upon does not apply to real property distributions and directives made in a divorce decree that are not judgments for payments of sums certain or judgments enforcing property liens. We also conclude that even if the decree and related orders in this case could reasonably be construed as judgments to which A.R.S. § 12–1551 applies, the limitations period has not been triggered. Accordingly, we reverse the court's ruling and remand for further proceedings.

**I. A.R.S. § 12–1551 is inapplicable to this case.**

■■■ ¶ 11 Section 12–1551 applies to judgments or decrees for payments of specific amounts of money or judgment liens and is therefore inapplicable to the equitable dissolution decree entered in this case. *See Johnson*, 195 Ariz. at 391–92, ¶ 11, 988 P.2d at 623–24 (holding A.R.S. § 12–1551 applicable where judgment ordered monthly installment payments in a specific amount by fixed due dates over a period of time); *Bryan v. Nelson*, 180 Ariz. 366, 370, 884 P.2d 252, 256 (App. 1994) (holding that because the recorded decree did not create an enforceable lien against real property, there was no need on appeal to address whether "the five-year renewal requirement for judgment liens under A.R.S. section 12–1551" applied); *Groves v. Sorce*, 161 Ariz. 619, 620–21, 780 P.2d 452, 453–454 (App. 1989) (finding A.R.S. § 12–1551 applicable to a lien imposed by the superior court pursuant to A.R.S. § 25–318(C), as amended).

¶ 12 In the instant case, the dissolution decree neither requires payment of a specific amount of money due at a certain time, nor does it create a judgment lien by a party against the real properties at issue.

■■■ ¶ 13 Furthermore, the "purpose of enacting a statute of limitations is to fix a limit within which an action must be brought

---

**5.** Absent material changes from the relevant date, we cite a statute's current version.

**6.** Section 12–1551(B) states: "An execution or other process shall not be issued on a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or process pursuant to § 12–1612 or an action is brought on it within five years from the

date of the entry of the judgment or of its renewal."

If by holding that it "lacked the power to enforce" the subject decree and related orders, the court meant to convey a lack of jurisdiction, we note that section 12–1551(B), which the court cited in support of its ruling, is a statute of limitations and not a limit on the court's jurisdiction.

and to prevent the unexpected enforcement of stale claims...." *Hall v. Romero*, 141 Ariz. 120, 126, 685 P.2d 757, 763 (App. 1984). Accordingly, A.R.S. § 12–1551, by its terms, would, for example, prevent a creditor from untimely seeking satisfaction, by means of execution or other such process, of a debt which has been embodied in a money judgment, absent renewal of judgment or tolling of the limitations period. The statute applies to judgments upon which execution or like process may be sought.

¶ 14 By contrast, the enforcement of dissolution decrees, typically through the court's contempt power, is generally predicated upon the equitable power of the family court "to do full and complete justice between the parties." *Genda v. Superior Court (Pima Cty.)*, 103 Ariz. 240, 244, 439 P.2d 811, 815 (1968).[7] The court thus retains jurisdiction to enforce a dissolution decree, *see id.* until such justice is achieved. In this pursuit, the court here may either grant relief in accordance with the original decree, or if such relief will no longer achieve full and complete justice between the parties, it may alternatively make new orders, consistent with the parties' property interests, to accomplish that end.

¶ 15 We therefore hold A.R.S. § 12–1551 is inapplicable to this matter and we reverse the court's ruling that it lacked the power to enforce the dissolution decree and related orders.

## II. Even if the subject dissolution decree and orders could be construed as judgments to which A.R.S. § 12–1551 applies, the limitations period has never been triggered.

¶ 16 On appeal, we understand Beirne to contend that the statute of limitations had

not run against the decree or any of the subsequent orders because neither the decree nor any of the orders dictated the date by which the properties were to be sold. He argues that, under the terms of the decree and the subsequent orders, the limitations period would be triggered only upon the occurrence of specific subsequent events— either Jensen's sale of the subject properties or her expressed decision whether to exercise her right of first refusal. He maintains that until such events occurred, he could not sue to enforce his award. If A.R.S. § 12–1551 was applicable to this case, and we hold it is not, we agree with Beirne that it would not have been triggered as of the date he filed his petition.

¶ 17 In *Groves*, after acknowledging that A.R.S. § 12–1551 imposes a five-year limitations period "in the absence of an affidavit of renewal," the court held that the statute "does not begin to run against a judgment if [the judgment] is not suable." 161 Ariz. at 621, 780 P.2d at 454. The court explained that the existence of the limitations period "does not mean that one must attempt to execute or sue on the judgment when one does not have a right to do so." *Id.* The court further stated, "when an action on a judgment would not be entertained ... until the occurrence of a particular event, the statute does not begin to run until the accrual of a cause of action on the judgment." *Id.*

¶ 18 We conclude that even if the subject decree and subsequent orders were judgments as set forth in A.R.S. § 12–1551, the sale of the properties or Jensen's expressed refusal to sell them are preconditions to Beirne having a right to sue for their proceeds, if necessary.[8] As neither of these con-

---

7. *But see Helber v. Frazelle*, 118 Ariz. 217, 218, 575 P.2d 1243, 1244 (1978) (overruling *Genda* "insofar as it purports to permit the [court] independent of statutory authority to enforce provisions in a divorce decree for payment of support after a child reaches the age of majority"), *overruled on other grounds by Solomon v. Findley*, 167 Ariz. 409, 411–12, 808 P.2d 294, 296–97 (1991).

8. While in *Groves*, the decree expressly made the payment of the lien amount payable upon the happening of certain specified events, unlike in

our case in which the decree was not so specific, we find the court's conclusions in that case persuasive. Here, under the decree, the sale of the properties or the refusal to do so are the only plausible conditions that could trigger the limitations period. *See, e.g., Matter of Paternostro*, 193 Misc.2d 310, 312, 748 N.Y.S.2d 228, 230 (Sur. Ct. Richmond Cty. 2002) (concerning a similar statute of limitations, the court held "[w]here there exists no direction to sell by a date certain, and where the property is not sold, as here, the statute of limitations will not begin to run until

ditions had occurred as of the date Beirne filed his petition, the statute's five-year limitations period was not triggered. Accordingly, the court's ruling was in error.

## CONCLUSION

¶ 19 For the foregoing reasons, we reverse the court's ruling and remand for further proceedings. Beirne requests an award of attorneys' fees pursuant to A.R.S. § 25–324 (2007) due to his lack of financial resources relative to Jensen. We award him fees, in an amount to be determined, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

the sale occurs or the person directed to sell, finally refuses to sell the premises ...").

