IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

DIANE KAY EANS-SNODERLY, *Petitioner/Appellant*,

*v.*

MICHAEL CHARLES SNODERLY, *Respondent/Appellee*.

No. 1 CA-CV 18-0447 FC

FILED 8-18-2020

Appeal from the Superior Court in Maricopa County
No. FC 2005-070898
The Honorable Lisa Ann VandenBerg, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART
VACATED AND REMANDED**

COUNSEL

Pangerl Law Firm PLLC, Phoenix
By Regina M. Pangerl
*Counsel for Petitioner/Appellant*

Owens & Perkins PC, Scottsdale
By Max Nicholas Hanson
*Counsel for Respondent/Appellee*

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

**B R O W N**, Judge:

¶1        Diane Kay Eans-Snoderly ("Wife") appeals the superior court's order granting summary judgment in favor of Michael Charles Snoderly ("Husband") on her petition for contempt and motion to enforce matters relating to a consent decree of dissolution.  The issues we address are (1) whether the court had jurisdiction to consider Wife's petition insofar as it sought contempt remedies for Husband's failure to pay the balance of his equalization debt, and (2) whether her petition and motion were barred by Arizona's judgment renewal statute or by laches.  Because we conclude the court erred in granting summary judgment, we vacate the court's order and remand for further proceedings.

## BACKGROUND

¶2        After Wife petitioned for divorce, the parties mediated their disputes, resulting in an agreement addressing their "community and separate property and obligations."   Under the agreement, which was incorporated into a consent decree of dissolution entered in 2006, the community business, Snoderly Distributing, Inc., was awarded to Husband, and Wife was awarded a $300,000 equalization payment.  The decree ordered Husband to maintain the business as a going concern and keep a life insurance policy in place until the equalization debt was fully paid.[1]  The decree further stated that Husband would pay Wife his share of the proceeds from the sale of the marital residence, less $50,000, and then make monthly installment payments on the remaining balance.   The agreement, however, left the amount and duration of the monthly installment payments blank, along with the date when interest would start

---

[1]        The agreement states that the requirement for Husband to maintain insurance applies "[i]f necessary."   While it is not entirely clear what this contingency means in context, Husband has not argued it has any effect on this appeal.

accruing. If Husband failed to pay the debt, the decree stated that Wife could file a contempt action.

¶3        In January 2007, the parties signed a handwritten agreement addressing, among other things, additional payment terms for the $300,000 equalization debt. Husband agreed (1) he would pay $5,000 per month to Wife beginning 30 days after closing on the sale of the marital residence, and (2) by February 2, 2007, he would name Wife as the beneficiary on his life insurance policy up to the amount still owing on the equalization debt. Husband paid Wife $70,000 from the sale of the marital residence in June 2007 and $5,000 per month from July 2007 through November 2009. He then made two more partial payments in December 2009 and January 2010, according to Wife's calculations. In May 2015, Husband filed for personal bankruptcy, and a discharge was entered a few months later; according to Wife, however, the equalization debt was not discharged.

¶4        Wife took no further court action to collect the remaining debt until October 2015, when she filed the 2007 agreement with the superior court under Arizona Rule of Family Law Procedure ("Rule") 69.[2] In December 2016, Wife filed a "post-decree petition for contempt and motion to enforce Rule 69 agreement," later amended in August 2017 (referred to hereinafter as the "Petition" unless otherwise noted). Wife asked the court to find Husband in contempt for (1) failing to pay the balance of the equalization debt, and (2) failing to maintain the business as a going concern by transferring it to a third party without her knowledge. She alleged Husband owed her $81,250 plus interest, for a total of $136,161.35, as of October 31, 2016. Wife also sought an order compelling Husband to fund the life insurance policy as he previously agreed, or alternatively, to provide other equitable relief to remedy his failure to comply with that agreement.

¶5        Husband moved for summary judgment, asserting the judgment renewal limitations period in A.R.S. § 12-1551 barred Wife's Petition because his last installment payment was due on April 30, 2011, and Wife filed the Petition after the five-year period for renewing or enforcing judgments. Husband also raised a laches defense.

---

[2]    Although Rule 69 has been amended since the parties' 2007 agreement, the Rule has consistently stated that an agreement is binding if it is in writing.

¶6          The superior court granted Husband's motion, concluding the judgment renewal statute barred Wife's Petition on the outstanding debt.  In denying Wife's subsequent motion to amend the judgment, the court (1) clarified that § 12-1551 applied because the $300,000 award was not for spousal maintenance, and (2) found that laches also barred the Petition.  The court awarded attorneys' fees and costs to Husband and entered a final judgment.  Wife filed a timely notice of appeal.  We later issued an order directing the parties to provide supplemental briefing on whether the superior court had jurisdiction to consider Wife's petition for contempt based on Husband's failure to pay the full amount of his equalization debt.

## DISCUSSION

¶7          Summary judgment is appropriate only if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Ariz. R. Fam. Law P. 79(a).  We review the grant of summary judgment de novo, considering the facts and any inferences drawn from those facts in the light most favorable to the party opposing the motion.  *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007).  We also review the interpretation of a statute de novo.  *Jensen v. Beirne,* 241 Ariz. 225, 228, ¶ 9 (App. 2016).  We review the superior court's decision on laches for an abuse of discretion.  *Rash v. Town of Mammoth*, 233 Ariz. 577, 583, ¶ 17 (App. 2013).

### A.      Jurisdiction—Petition for Contempt

¶8          In seeking to enforce the terms of the consent decree and the Rule 69 agreement, Wife's Petition requested, inter alia, that the court find Husband in contempt for failing to finish paying the equalization debt and failing to maintain the business as a going concern.  The law is clear that this court lacks jurisdiction "over an appeal from a civil contempt adjudication."  *Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001).  Thus, we do not have jurisdiction to consider Wife's appeal of the superior court's ruling denying her petition for contempt.  In our discretion, however, we will treat Wife's appeal from the court's ruling as a petition for special action and accept jurisdiction.  *See id.*

¶9          We next decide whether the superior court had jurisdiction to enter the order from which this appeal was taken.  *See Bates & Springer of Ariz., Inc. v. Friermood*, 109 Ariz. 203, 204 (1973).  "In Arizona, dissolution of marriage proceedings are creatures of statute, and jurisdiction to decide such cases is conferred on the courts by the legislature."  *In re Marriage of*

*Waldren*, 217 Ariz. 173, 175, ¶ 8 (2007); *accord Weaver v. Weaver*, 131 Ariz. 586, 587 (1982) ("Title 25 defines the boundaries of a dissolution court's jurisdiction, and the court may not exceed its jurisdiction even when exercising its equitable powers."). Thus, the issue here is whether Wife's petition for contempt falls within the jurisdictional boundaries of Title 25.

¶10        In 1973, our legislature adopted A.R.S. § 25-317, which provides in relevant part:

> A. To promote amicable settlement of disputes between parties to a marriage, the parties may enter into a written separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them, and support, custody and parenting time of their children.
>
> . . . .
>
> D. If the court finds that the separation agreement is not unfair as to disposition of property . . . , the separation agreement shall be set forth or incorporated by reference in the decree of dissolution or legal separation and the parties shall be ordered to perform them.
>
> . . . .
>
> E. Terms of the agreement set forth or incorporated by reference in the decree *are enforceable by all remedies available for enforcement of a judgment, including contempt.*

(Emphasis added.)[3]  To our knowledge, the meaning of § 25-317(E) has not been previously interpreted in any reported decision, except to recognize the constitutional prohibition of ordering imprisonment for nonpayment of property settlement payments.  *See infra* ¶¶ 11–13.  But the statute's language yields only one reasonable meaning; it unambiguously provides that the terms of a written separation agreement are enforceable by all remedies available to enforce judgments, including contempt.  *See Glazer v. State*, 237 Ariz. 160, 163, ¶ 12 (2015) ("If the statute is subject to only one reasonable interpretation, we apply it without further analysis.").  The legislature could have qualified that language by creating exceptions or

---

[3]    The parties do not dispute that their negotiated consent decree constitutes a written separation agreement within the scope of A.R.S. § 25-317.

otherwise limiting the scope of this provision such that terms related to property settlements would not be included, but it did not do so. *See State Farm Mut. Auto. Ins. Co. v. White*, 231 Ariz. 337, 341, ¶ 14 (App. 2013) ("We 'will not read into a statute something which is not within the manifest intent of the legislature as indicated by the statute itself.'" (citation omitted)).

**¶11** We recognize that both our supreme court and this court have held that property settlement payments cannot be enforced by contempt proceedings. *See, e.g.*, *Proffit v. Proffit*, 105 Ariz. 222, 224–25 (1969); *Masta v. Lurie ex rel. Superior Court*, 22 Ariz. App. 170, 171 (1974); *Danielson*, 201 Ariz. at 411, ¶ 37. In *Proffit*, the superior court found the defendant wife in contempt because she failed to pay her husband money she owed him under the divorce decree. 105 Ariz. at 223–24. The court's contempt order stated that wife was "subject to such punishment as the court may impose, including incarceration in the County Jail for such period of time as the court may deem equitable and just in the premises." *Id.* at 224. Our supreme court held that the contempt order violated Article 2, Section 18 of the Arizona Constitution, which prohibits imprisonment for failure to pay a debt. *Id.* at 224–25. Comparing wife's situation to an earlier case, the court commented that unlike alimony and support payments, property settlement payments "may not be enforced by contempt proceedings." *Id.* (citing *Stone v. Stidham*, 96 Ariz. 235, 237–38 (1964)). The court added that the decree's provision directing wife to pay husband a sum of money "should be treated like any other judgment." *Id.* at 225. Our supreme court has not opined on the effect of the later-adopted § 25-317(E) on its analysis or holding in *Proffit*.

**¶12** In *Masta*, we considered whether the superior court had the power to incarcerate the husband after finding him in contempt for failing to pay certain community debts. 22 Ariz. App. at 170. Noting the recent adoption of § 25-317(E), we stated that the legislature "intended to allow a property settlement agreement incorporated into a decree of dissolution to be enforced by all former[ly] available remedies, including contempt as it has been used and interpreted in this State" but that the legislature did not intend to "invalidate the provisions of Article 2, Section 18 of the Arizona Constitution and all of the prior Arizona case law." *Id.* at 171. We therefore concluded the superior court could not incarcerate the husband for contempt. *Id.* We did not address whether the superior court lacked jurisdiction to consider husband's failure to pay as part of a contempt proceeding or whether the court could utilize other remedies to compel payment. *See id.* In *Danielson*, citing *Proffit* and *Masta*, we held that the superior court lacked jurisdiction to hold the husband in contempt for

6

failure to pay military retirement benefits to his wife. 201 Ariz. at 411–12, ¶¶ 37–38.

**¶13** These cases are distinguishable from the present case. *Proffit* was decided in 1969, four years before the legislature adopted § 25-317(E). And neither *Masta* nor *Danielson* addressed whether the superior court had jurisdiction, under the plain language of § 25-317(E), to consider a petition for contempt relating to nonpayment of an obligation incurred under a separation agreement.

**¶14** If we agreed with Husband's position that the superior court lacked jurisdiction over Wife's petition for contempt, we would have to conclude that when the legislature adopted § 25-317(E), it merely codified the existing common law — a law already binding upon the courts. *See* A.R.S. § 1-201 ("The common law only so far as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people thereof, and not repugnant to or inconsistent with the Constitution of the United States or the constitution or laws of this state, or established customs of the people of this state, is adopted and shall be the rule of decision in all courts of this state."). We cannot presume the legislature only intended to maintain the status quo when it adopted § 25-317(E); instead, we presume that all words in a statute have a substantive, meaningful purpose. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."). Here, that purpose was to provide the superior court with broad authority to enforce separation agreements, as evidenced by the phrase "all remedies available for enforcement of a judgment, including contempt." A.R.S. § 25-317(E); *cf.* Ariz. R. Fam. Law P. 92(a)(1) (authorizing courts to use civil contempt sanctions "for compelling compliance with a court order or for compensating a party for losses because of a contemnor's failure to comply with a court order").

**¶15** As directed by the legislature, the superior court has jurisdiction over petitions for contempt that seek to enforce the terms of a settlement agreement. But because statutes must be read in a manner to avoid constitutional conflicts, *Lagerman v. Ariz. State Ret. Sys.*, 248 Ariz. 504, 507, ¶ 13 (2020), the remedy of contempt provided by § 25-317(E) is subject to the narrow exception that incarcerating a party for his or her nonpayment of a debt would violate our constitution. *See Proffit*, 105 Ariz. at 224. Accordingly, we hold that § 25-317(E) gives the court jurisdiction to consider a petition for contempt for a spouse's failure to comply with the terms of a separation agreement, including an obligation for payment of

money, except the court cannot order incarceration for such nonpayment. *See Waldren*, 217 Ariz. at 178, ¶ 24 (recognizing that in the context of dissolution actions, "the legislature has the power to circumscribe the courts' jurisdiction"); *cf.* Ariz. R. Fam. Law P. 92(e) (authorizing a court to impose appropriate sanctions for obtaining compliance, including "seizure of property, attorney fees, costs, compensatory or coercive fines," incarceration, and other coercive sanctions "permitted by law," as long as the order includes a purge provision).

### B.    Judgment Renewal Statute

**¶16**        We next consider whether A.R.S. § 12-1551 barred Wife's Petition (1) seeking to hold Husband in contempt for his failure to pay the remaining equalization debt and maintain the business as a going concern, and (2) requesting enforcement of the Rule 69 agreement, which required Husband to list her as a beneficiary on a life insurance policy with a value equal to the amount of the remaining debt. The superior court concluded that § 12-1551 barred Wife's Petition because more than five years had passed since entry of the decree and the Rule 69 agreement. At the time of Wife's Petition, § 12-1551(B) stated:

> An execution or other process shall not be issued on a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or process pursuant to § 12-1612 or an action is brought on it within five years from the date of the entry of the judgment or of its renewal.[4]

By definition, this statute applies only to a judgment "upon which execution or like process may be sought." *Jensen*, 241 Ariz. at 229, ¶ 13. In *Jensen*, we distinguished between a decree ordering "payment of a specific amount of money due at a certain time" and a decree mandating equitable real property distributions. *Id.* at 228, ¶¶ 11–12. The judgment renewal statute applies to the former but not the latter, because equitable real property distributions "are not judgments for payments of sums certain or judgments enforcing property liens." *Id.* at ¶ 10.

**¶17**        Husband contends the $300,000 equalization debt was a specific, enforceable money judgment subject to the five-year renewal period in § 12-1551. But even though the decree specified the amount of the

---

4        Effective August 3, 2018, the renewal period is now ten years. *See* 2018 Ariz. Sess. Laws, ch. 36, § 1 (2d Reg. Sess.).

equalization payment due to Wife, it did not specify with certainty how or when that debt was to be paid. The decree plainly contemplated that after the marital residence was sold and the proceeds distributed, Husband would pay the equalization amount in future installment payments of unspecified amounts and at an unspecified interest rate. To further protect Wife's right to future payments, the decree included the life insurance provision. Until the terms of payment were fleshed out in the Rule 69 agreement, the entire $300,000 debt was not due immediately upon entry of the decree and Wife had no right to execute on the $300,000 judgment. The statute of limitations in § 12-1551 does not begin to run until such a right exists. *Cf. Groves v. Sorce*, 161 Ariz. 619, 621 (App. 1989) (holding a statute of limitations "does not begin to run against a judgment if it is not suable").

**¶18** For similar reasons, we reject Husband's argument that because § 12-1551 applies to each installment payment as it came due, Wife is barred from collecting payments more than five years past due. In *Johnson v. Johnson*, 195 Ariz. 389, 391–92 (App. 1999), we held that the five-year renewal limitation begins on the due date of each installment payment. But as noted above, the consent decree here did not specify the amounts of the installment payments or when they were to begin. The limitations period could not begin to run because the terms of the payment were not delineated.

**¶19** Husband argues the Rule 69 agreement specified the payment due date, thus making the judgment enforceable and subject to § 12-1551. The Rule 69 agreement stated the first installment payment was due 30 days after the sale of the marital residence closed. Although the agreement did not specify a closing date, Husband offered a warranty deed signed on April 30, 2007, as evidence of the closing date. This, he asserts, means that Wife had until April 30, 2016, to enforce the judgment and thus her December 1, 2016, Petition was untimely.

**¶20** Husband's argument is based on the thought that the Rule 69 agreement was a judgment, subject to renewal under § 12-1551. As applicable here, however, a judgment is "a decree or an order from which an appeal lies." Ariz. R. Fam. Law P. 78(a)(1); *accord Ariz. Farmers Prod. Credit Ass'n v. Stewart Title & Tr. of Tucson*, 24 Ariz. App. 5, 7 (1975) (holding that "judgment" as used in § 12-1551 has the same meaning as in Arizona Rule of Civil Procedure 54(a), i.e., "a decree and an order from which an appeal lies"). And the parties never submitted the Rule 69 agreement to the court to have it incorporated into an amended decree. Therefore, even if the Rule 69 agreement established the payment terms, it is not a judgment. Without the necessary "judgment," the judgment renewal statute does not

apply. The superior court therefore erred in granting Husband's motion for summary judgment based on § 12-1551.[5]

¶21 Further, in denying Wife's Petition, the superior court did not address Wife's claims that Husband failed to maintain the business and name Wife as beneficiary of the life insurance policy until he had paid her in full. To the extent the court relied on § 12-1551 in dismissing these claims, it erred because Husband's obligations to maintain the business and keep a life insurance policy in place are equitable directives, not money judgments "upon which execution or like process may be sought." *Jensen*, 241 Ariz. at 229, ¶ 13. On remand, the court should address and resolve the merits of these claims.

### C. Laches Defense

¶22 In the superior court, Husband claimed that the equitable defense of laches barred Wife's Petition. To prevail on this defense, Husband had to show that Wife unreasonably delayed asserting her claims and he was prejudiced by the delay. *See Flynn v. Rogers,* 172 Ariz. 62, 66 (1992).

¶23 Husband asserted that Wife unreasonably delayed filing her Petition until seven years after he made his last payment, in January 2010. Wife countered that Husband asked her to wait to seek relief while he sought a loan and then until completion of his bankruptcy proceedings. Wife also presented evidence that Husband appeared to continue running the business after he stopped making payments, rendering her unaware of any alleged business failure or transfer of ownership.

¶24 Wife also offered evidence that in 2016, Robert Scalf, who eventually took over the business, contacted Wife on Husband's behalf. Through Scalf, Husband acknowledged he still owed Wife for her share of

---

[5]     Husband has waived his alternative argument, raised for the first time on appeal, that Wife's Petition is barred because it exceeded the six-year statute of limitations applicable to written contracts for payment of a debt. *See* A.R.S. § 12-548(A); *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 302, ¶ 10 (App. 1999) (recognizing that a statute of limitation defense is waived if not timely asserted). Similarly, even assuming its applicability here, Husband has waived any claim that the one-year limitation on contempt proceedings set forth in A.R.S. § 12-865(A) would bar Wife's Petition because he did not raise it in the superior court. *See Uyleman*, 194 Ariz. at 302, ¶ 10.

the business and was trying to settle this debt and make payment plans. After this communication, Husband began paying Wife $250 per month. Wife filed her Petition two months after Husband stopped making the $250 monthly payments.

¶25        Although much of this evidence related to payment of the equalization debt, material disputed facts exist about the reasonableness of Wife's delay in raising all her claims and whether Husband's conduct and partial payments caused Wife to delay filing her Petition. Wife's delay in seeking enforcement may not be unreasonable if Husband (1) appeared to still be in control of the business, (2) asked Wife to delay collection proceedings, or (3) reaffirmed the validity of the outstanding debt and negotiated alternative payment options. *Cf. Certainteed Corp. v. United Pac. Ins. Co.*, 158 Ariz. 273, 277–79 (App. 1988) (holding that a defendant may be estopped from asserting a statute of limitations defense if he induced the plaintiff to delay filing suit by leading the plaintiff to believe that the claim would settle without filing suit).

¶26        Husband argues nonetheless he was prejudiced by the delay because relevant financial records are no longer available, and his memory has faded. He also argues it would be inequitable to enter a large judgment against him so many years after the divorce. But nothing in the record shows that Husband changed his financial position in reliance on Wife's delay; mere allegations of prejudice are insufficient. *See In re Marriage of Yuro*, 192 Ariz. 568, 574 (App. 1998). Although the lack of available information on this issue might support a finding of prejudice, an evidentiary hearing is required because questions of fact exist regarding the reasonableness of Wife's delay. The superior court therefore erred in granting summary judgment based on laches.

### D.    Attorneys' Fees and Costs

¶27        The superior court awarded Husband $8,000 in attorneys' fees and costs under A.R.S. §§ 12-341 and 12-341.01. Because we are vacating the court's summary judgment order, we also vacate the award of attorneys' fees and costs. Both parties request an award of attorneys' fees on appeal pursuant to §§ 12-341.01 and 25-324. The court may reconsider on remand any requests for attorneys' fees, including fees incurred in this appeal, pending the outcome of this litigation. *See Tierra Ranchos Homeowners Ass'n*, 216 Ariz. at 204, ¶ 37.

¶28        Wife also requests attorneys' fees as a sanction under A.R.S. § 25-415. Because she failed to provide any supporting grounds, we deny

her request.  However, as the successful party on appeal, Wife is entitled to an award of taxable costs upon compliance with ARCAP 21.

**CONCLUSION**

**¶29**        We vacate the superior court's order granting summary judgment and remand for further proceedings consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED:        AA