NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MARIA LUISA AGUINIGA, *Petitioner/Appellee*,

*v.*

MIGUEL AGUINIGA, *Respondent/Appellant*.

No. 1 CA-CV 21-0221 FC
FILED 11-3-2022

Appeal from the Superior Court in Maricopa County
No. FC2014-071832
The Honorable Joseph Shayne Kiefer, Judge

**SPECIAL ACTION JURISDICITON ACCEPTED IN PART AND
RELIEF DENIED;
AFFIRMED IN PART; VACATED IN PART AND REMANDED**

COUNSEL

Maria Luisa Aguiniga, Buckeye
*Petitioner/Appellee*

Law Offices of Pedro A. Simpson, PLLC, Gilbert
By Pedro A. Simpson
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

_____

**C R U Z**, Judge:

¶1 Miguel Aguiniga ("Husband") and Maria Luisa Aguiniga ("Wife") filed competing post-decree petitions for contempt and to enforce the dissolution decree. Husband appeals the rulings on those petitions. He also appeals the denial of his motion to alter or amend, alternatively, for relief from those rulings. For the reasons stated below, we vacate the ruling for temporary spousal maintenance arrearages and remand for reconsideration of Husband's overpayment claim. Accepting special action jurisdiction over his challenges relating to the contempt, as directed by the Arizona Supreme Court, we deny relief and affirm all other orders.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 The 2017 decree of dissolution allocated community property and tax obligations, awarded spousal maintenance to Wife, ordered Husband to return $50,000 to his 401(k) account, and granted Wife $5,500 in attorneys' fees. Husband appealed from the decree in 2017 ("2017 Appeal"), and this court affirmed. *See Aguiniga v. Aguiniga*, 1 CA-CV 17-0299FC, 2018 WL 3722504 (Ariz. App. July 31, 2018) (mem. decision).

¶3 While the 2017 Appeal was pending, Wife submitted a qualified domestic relations order ("QDRO") and asked the superior court to divide a pension that was not included in the decree. In turn, Husband objected and petitioned to enforce other provisions in the decree. In response, Wife also sought to enforce the decree. After a hearing on these petitions, the court ordered the parties to sell vehicles (including a recreational vehicle), sign 2014 tax returns, and "encourage[d]" Husband to refinance the marital home within sixty days.

¶4 After the mandate issued in the 2017 Appeal, both parties again petitioned to enforce the decree and hold the other in contempt. Wife submitted a different QDRO, to which Husband objected. The superior court addressed these petitions in an August 2020 order ("2020 Order"). The 2020 Order (1) confirmed Husband's obligation to return $50,000 to the

401(k) account; (2) entered a judgment against Husband for temporary spousal maintenance arrearages; (3) ordered Husband to remove Wife's name from the loan related to the marital home by a certain date or sell the home; (4) affirmed the equalization payment due Wife for the community vehicles; (5) affirmed Husband's obligation to pay half the 2010 tax liability; (6) ordered the parties to share equally in any 2014 tax return or liability; (7) ordered Husband to pay the $5,500 attorneys' fees award from the decree; and (8) sanctioned Husband $5,000 for contempt. The court also awarded Wife additional attorneys' fees in an amount to be determined.

¶5            Before the superior court entered a final attorneys' fee award, Husband moved to alter or amend the 2020 Order under Arizona Rule of Family Law Procedure ("Rule") 83, alternatively for relief from judgment under Rule 85 ("Rule 83/85 Motion"). In its February 2021 order ("2021 Order"), the court denied Husband's motion on all but one issue not relevant to the appeal and awarded Wife $2,500 in attorneys' fees consistent with the 2020 Order. Husband timely appealed the 2021 Order.

## DISCUSSION

¶6            Consistent with the Arizona Supreme Court's September 2, 2022 order, we exercise jurisdiction over the orders on the petitions to enforce the dissolution decree and the denial of Husband's Rule 83/85 Motion under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2). We treat Husband's appeal from the contempt rulings as a special action, but deny for the following reasons.

I.       Due Process

¶7            Husband argues that he was entitled to a new trial because the limited hearing time violated his due process rights. Due process claims are issues of law that we review de novo. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999). Due process requires that the court "afford the parties an opportunity to be heard at a meaningful time and in a meaningful manner." *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (citation and internal quotation marks omitted). "[T]o merit reversal, a party must show they incurred some harm as a result of [a] court's time limitations." *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 17 (App. 2010) (citation and internal quotation marks omitted).

¶8            According to Husband, he needed more time because of Wife's untimely disclosure of many exhibits and her responses during cross-examination. However, as Husband acknowledges, at the end of the

3

first day, when it was clear that more evidence was needed, the court added another ninety-minute session.

¶9            Husband argues the additional ninety minutes did not satisfy due process because the court awarded more time to Wife even though he had not presented any evidence on the first day of the hearing. Although Husband did not testify on the first day of the hearing, it is not because the court gave Wife "all the time." Husband's attorney chose to use his time cross-examining Wife rather than call Husband to testify. The court also noted the inefficient handling of exhibits and admonished the parties to better prepare for the second day of the hearing. The court determined that the added hearing time would allow Husband to respond to Wife's exhibits. Although this case involved multiple issues, Husband's inefficient use of time does not constitute a due process violation by the court. *See Volk*, 235 Ariz. at 469, ¶ 22.

¶10           On the second day of the hearing, Husband's attorney asserted that if given more time Husband would testify that, contrary to Wife's position, he did pay his share of the 2010 taxes. On appeal, Husband contends that he was not given enough time to explain why he did not repay the $50,000 to the 401(k) account as ordered. The court's failure to grant Husband more time does not amount to prejudice requiring a new trial. Husband chose which issues to address at the hearing and how much time to dedicate to each. His inability to present certain evidence stemmed from his own trial time-management decisions. *See id.* Thus, he has shown no due process violation. Nor do we find that the superior court violated Husband's due process rights when it allowed Wife's QDRO attorney additional time to argue at the second hearing without allowing Husband an opportunity to respond. Husband did not object to the court's failure to give him time to respond. Accordingly, he has waived this issue.

¶11           Husband also argues that the court erred in failing to sanction Wife for submitting untimely exhibits. However, the court noted that Wife failed to identify a previously-disclosed document as an exhibit, unlike Husband who offered a document that had not been previously disclosed. Thus, the court did not abuse its discretion by declining to sanction Wife. *See Seidman v. Seidman*, 222 Ariz. 408, 411, ¶ 18 (App. 2009) (rulings on sanctions for discovery violations reviewed for an abuse of discretion).

II.      The QDRO

¶12           The parties disputed the appropriate language to include in the QDRO. Husband argued the QDRO should allocate one-half the value

of the 401(k) as of the dissolution date, and Wife asserted that the QDRO should state that her interest is $31,059.93, which is one-half the balance of the 401(k) account as found in the decree. Husband argues, however, that Wife's interest must account for an $11,157.69 loan against the 401(k) at the time of the dissolution. Wife's QDRO attorney explained these arguments to the superior court and offered the proposed QDRO as an exhibit. Husband objected. Despite the confusing nature of the objection, Husband claimed the QDRO was "defective."

¶13　　　　Husband argues the QDRO presented to the court was different from the one Wife's QDRO attorney purported to submit. The QDRO attorney erroneously told the court that Exhibit 65 included the QDRO awarding Wife the sum certain of $31,059.93. But the QDRO in Exhibit 65 does not contain this language; it states that Wife's interest in the 401(k) account is 50% of the value as of the valuation date, without providing a specific value. A different QDRO in the record states that Wife's interest is $31,059.93, without accounting for the loan.

¶14　　　　The court ultimately signed the QDRO that included the specific amount of $31,059.93. But before doing so, the court heard Wife's testimony on the $11,157.69 loan issue. Specifically, Wife testified that the two took out the loan during the marriage to pay a community expense but that she gave Husband the money to repay the loan and he did not. Given Wife's testimony, the court was within its discretion to make Husband responsible for the $11,157.69 loan. *See* A.R.S. § 25-318(C). And although there is no ruling addressing this loan directly, in its final order the court denied all relief not expressly granted, so the ruling implicitly denies Husband's claim regarding the loan. The court also did so implicitly when it signed the QDRO stating that Wife's interest was $31,059.93.

III.　　Spousal Maintenance

¶15　　　　The superior court entered a judgment against Husband for temporary spousal maintenance arrearages plus interest. As the court noted, there are multiple case status reports from the Support Clearinghouse containing different amounts. One report included arrearages from temporary support orders, whereas the other reports do not include the temporary support arrearages.

¶16　　　　The temporary order required Husband to pay Wife $750 per month effective October 1, 2014. Because the court entered this order in June 2015, Husband was immediately eight months in arrears. The decree reduced the final support awarded to $500 per month from May 1, 2016

through December 31, 2016, but did not affirm or reduce the temporary support arrearage to a judgment.

¶17 Husband made his first temporary support payment in August 2015, and then he underpaid for several months until the court entered the final support award. Starting May 2016, Husband overpaid his support obligation by varying amounts through March 2017. Wife's petition to enforce the decree sought a judgment for the temporary support arrearages. By contrast, Husband argued that he overpaid, and Wife owed him.

¶18 Husband contends that because the decree did not affirm or reduce the temporary support arrearages to a judgment, the temporary support arrearages were unenforceable under A.R.S. § 25-315(F)(4). This is a question of law we review de novo. *Alley v. Stevens*, 209 Ariz. 426, 428, ¶ 6 (App. 2004).

¶19 Under A.R.S. § 25-315(F)(4) and Rule 47(j)(1), temporary orders terminate upon entry of the final decree. Rule 47(j)(1) further provides that, upon entry of a final decree, temporary orders are unenforceable unless the final decree provides otherwise. "Thus, when a final decree does not include a judgment for the arrearages owed under temporary orders, those arrearages are no longer enforceable." *Valencia v. Valencia*, 1 CA-CV 19-0223FC, 2020 WL 1522820, at *2, ¶ 11 (Ariz. App. Mar. 31, 2020) (mem. decision) (citing *Moncur v. Moncur*, 1 CA-CV 14-0320, 2015 WL 1395296, at *2, ¶ 10 (Ariz. App. Mar. 24, 2015) (mem. decision)).[1] The court can prevent the paying parent from "simply not paying and 'running out the clock' on the temporary support order" by including a judgment for the temporary support arrearages in the final decree. *Valencia*, 1 CA-CV 19-0223FC at *2, ¶ 11. Absent that "[t]he creditor-parent can also object to or otherwise seek relief from a decree that fails to include the arrearages." *Id.*

¶20 Because the decree did not include a judgment for temporary support arrearages, the superior court erred in entering a post-decree judgment for the temporary support arrearages. Accordingly, we vacate the post-decree judgment for temporary support arrearages and remand for reconsideration of any overpayment and Husband's request to quash the income withholding order.

---

[1] *See* Ariz. R. Sup. Ct. 111(c)(1)(C) (providing that memorandum decisions issued after January 1, 2015, may be cited for persuasive value).

IV.    2014 Tax Liability

**¶21**        Husband contends that he paid the parties' 2014 tax liability, so the superior court erred by failing to enter a judgment in his favor for Wife's share.  Although Husband summarized the amount he claims Wife owes, his summary is not supported by any evidence in the record.  In addition, the record supports a finding that as a result of Husband withdrawing $50,000 from his 401(k) in 2014, the parties incurred a $5,000 tax liability.  Thus, even if Husband paid more than half of the 2014 tax liability, the court could properly consider that his unauthorized withdrawal created the $5,000 in tax liability.  *See* A.R.S. § 25-318(C).  The court thus did not abuse its discretion.

**¶22**        Husband also argues that Wife refused to sign the parties' 2014 tax returns until the court ordered her to do so in 2018.  He contends, therefore, that she should bear the cost of all interest and penalties resulting from the late filing.  The superior court found that "both parties failed to prove that the other party did not sign the tax return before the deadline or that either party was responsible for any late filing of the 2014 taxes."  The record supports this finding.  Wife claimed she refused to sign the returns before the court order because Husband presented her with fraudulent returns.  Husband conceded that the 2014 taxes were filed before the April 15, 2018 deadline, which is confirmed by I.R.S. records.  Wife also testified that the fee for filing late in 2014 was credited back to the parties.  Thus, the court did not abuse its discretion by ordering the parties to equally divide any interest or penalties.

V.    Allegedly Unresolved Claims

**¶23**        Husband argues the 2020 Order did not resolve the issue of the vehicle sale proceeds in his attorney's trust account, the alleged loan against the 401(k) account, and did not enter judgment against Wife for her share of the 2014 tax liability.  Although the 2020 Order did not expressly release the funds from the attorney trust account, it directed Husband to pay Wife $9,300 for the vehicles.  This sufficiently authorized Husband's attorney to release those funds consistent with the prior order.  The 2020 Order also denied all relief not expressly granted, thereby resolving the 401(k) loan issue.  *See supra* ¶ 14.  Finally, the court ordered the parties to equally split any 2014 tax refunds or liabilities, including fees or penalties and to reconcile the 2014 taxes by September 30, 2020.  The failure to identify the specific amount each party owed does not mean the issue was left unresolved.  If the parties cannot complete the reconciliation, they may seek further court intervention.

VI.     Contempt Issues

¶24     The superior court found Husband in contempt and imposed a $5,000 sanction for his failure to pay Wife the vehicle equalization payment, his share of the 2010 taxes, and the prior award of attorneys' fees. It also found him in contempt for failing to comply with the QDRO orders or repay funds to the 401(k) account.

A.     Statute of Limitations

¶25     Husband now argues that the court erred in finding him in contempt because Wife did not petition for contempt within one year as required by A.R.S. § 12-865. Husband did not raise this defense in response to Wife's contempt petitions. He first cited the one-year statute of limitations in his Rule 83/85 motion. Assuming this preserved the issue, Wife's petition was timely.

¶26     The decree did not order Husband to pay any of these obligations by a specific date. Nor did the later order regarding the vehicles specify a date for payment. Thus, the statute of limitations did not bar Wife's petition because there was no specific date by which Husband had to comply. *Compare Eans-Snoderly v. Snoderly*, 249 Ariz. 552, 557-58, ¶¶ 17-18 (App. 2020) (holding that the statute of limitations in A.R.S. § 12-1551 does not begin to run where the terms of the payment are not delineated).

¶27     As to the QDRO, the decree ordered the parties to split the cost to prepare the QDRO and to lodge the QDRO by May 31, 2017. Wife lodged a proposed QDRO while Husband's earlier appeal was pending, and the superior court declined to approve it until the appeal was resolved. The mandate in the appeal was issued in January 2019, and Wife resubmitted the QDRO soon after and sought to hold Husband in contempt for continuing to object to the QDRO. Wife filed her contempt petition within one year of the appellate mandate and her resubmission of a proposed QDRO. Thus, the petition was timely as to the QDRO.

B.     Availability of Contempt Remedy

¶28     Contrary to Husband's contention, courts may enforce all orders, including property settlement payment requirements, through their contempt powers. *Eans-Snoderly*, 249 Ariz. at 556-57, ¶¶ 11-15; *see also* A.R.S. § 25-317(E) ("Terms of the agreement set forth or incorporated by reference in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt."). Courts may not, however, incarcerate a spouse for nonpayment. *Eans-Snoderly*, 249 Ariz. at

556-57, ¶¶ 11-15. To be sure, *Eans-Snoderly* addressed the enforcement of a settlement agreement under A.R.S. § 25-317(E) and not a decree. Under § 25-317(E), contempt remedies are available to enforce a decree that incorporates a property settlement agreement. We see no reason why contempt remedies should not apply equally to property orders in a decree following a trial. *See also* Ariz. R. Fam. Law P. 92(a)(1) (authorizing courts to use civil contempt sanctions "for compelling compliance with a court order or for compensating a party for losses because of a contemnor's failure to comply with a court order"). Thus, the court had authority to issue contempt remedies.

### C. Vehicle Equalization Payment

**¶29** The superior court found Husband in contempt for failing to pay the $9,300 vehicle equalization payment as ordered in the decree. The decree awarded Husband six community vehicles worth $18,600 and an equalization payment to Wife. Husband contends that he could not sell the vehicles for the value listed in the decree because of Wife's delay. However, the decree did not make the amount of the equalization payment contingent upon Husband selling the vehicles for a total of $18,600. The court's directive to pay Wife from the "sales proceeds" refers to the proceeds from the sale of the RV: "IT IS ORDERED that the RV be sold and the proceeds be evenly split after Husband pays the equalization payment of $9,300 to Wife from the sales proceeds." Thus, the decree did not condition the $9,300 payment on Husband selling the other vehicles for $18,600.

**¶30** Contrary to Husband's argument, the contempt ruling is not inconsistent with the decree or later orders. According to Husband, a 2018 order recognized Wife's refusal to cooperate in transferring the vehicle titles so Husband could sell them. Husband argues that the court disregarded this prior order and Wife's role in his inability to pay the $9,300 when it found him in contempt. To be sure, the February 2018 order directs the parties to sell all six vehicles and the RV. The court ordered Wife to sign the GMC title and "attempt to get a title to the unlicensed trailer." She did so in February 2018. The evidence showed that Husband could sell the other vehicles and the RV without Wife's participation and that he never sold the RV. Furthermore, there was no evidence showing how much the GMC decreased in value due to Wife's delay. Thus, the court did not abuse its discretion in denying Husband's request to reduce the $9,300 equalization payment.

D.      2010 Tax Liability

**¶31**      The superior court found Husband failed to pay his share of the 2010 tax liability as ordered in the decree, found him in contempt, and entered a judgment for Wife.  Husband argues this was error because he paid the 2010 tax liability.  However, Wife testified that she paid the entire amount.  The only evidence supporting Husband's contention is an unsupported statement in his amended pre-hearing statement.  Allegations in pleadings and filings, and argument of counsel, do not constitute evidence. *See State v. Grounds*, 128 Ariz. 14, 15 (1981); *Bank of Yuma v. Arrow Constr. Co.*, 106 Ariz. 582, 585 (1971).  No testimony or exhibits support Husband's assertion.  Thus, the court was within its discretion to accept Wife's testimony that she paid the 2010 tax liability.  *See City of Tucson v. Apache Motors*, 74 Ariz. 98, 107-08 (1952) ("The rule is that the judge or jury, being the sole judges of the facts and the credibility of witnesses, may or may not believe an interested party.").  We affirm the judgment and contempt ruling on this issue.

E.      Failure to Repay $50,000 to 401(k)

**¶32**      The decree ordered Husband to return $50,000 he withdrew from the 401(k) account.  That order was affirmed on appeal. *Aguiniga v. Aguiniga*, 1 CA-CV 17-0299FC, at *1-2, ¶¶ 5-9.  Husband admitted that he had not made a lump-sum payment of $50,000 because he would face "penalties by the federal government[.]"  He suggests that because the balance of the 401(k) exceeded Wife's $31,000 interest, he did not violate the spirit of the decree.  But the court ordered Husband to repay the entire $50,000, not the amount necessary to pay Wife's share.  Thus, we affirm the finding that he was in contempt for failing to repay the $50,000 to the 401(k) account.

F.      Marital Residence

**¶33**      Husband argues that the superior court erred in finding him in contempt for failing to refinance the marital home and remove Wife from any related debts.  However, the court did not find Husband in contempt for violating orders related to the residence; it ordered him to comply with those orders or be found in contempt in the future.  Accordingly, this issue is moot. *See Fraternal Order of Police Lodge 2 v. Phoenix Emp. Rels. Bd.*, 133 Ariz. 126, 127 (1982) (absent exceptions not present here, courts generally refrain from considering moot issues).

**¶34**      Husband also argues the superior court erred because it did not expressly find that he removed Wife's name from the home loan.

Although he argues that Wife caused the delay in removing her name from the home loan, Husband conceded that Wife was no longer on the loan. Given the lack of a contempt finding on this issue, it is moot, and we do not address it. *Id.*

### G. $5,000 Contempt Sanction

**¶35** Having affirmed all the contempt findings, we reject Husband's argument that the superior court abused its discretion by imposing a $5,000 sanction. *See* Ariz. R. Fam. Law P. 92(e)(2) (authorizing courts to impose sanctions for contempt, including compensatory or coercive fines).

## VII. Additional Attorneys' Fees

**¶36** The 2020 Order awarded attorneys' fees to Wife in an amount to be determined. In denying Husband's Rule 83/85 motion, the superior court entered a judgment awarding Wife $2,500 consistent with the earlier fee award. The court found that Husband was unreasonable in failing to repay the $50,000 to the 401(k), make the vehicle equalization payment, pay his share of the 2010 taxes, or pay the attorneys' fees awarded in the decree. On appeal, Husband failed to show how his positions on these issues or failure to make these payments was reasonable. Therefore, we affirm the award of $2,500 in fees to Wife.

## ATTORNEYS' FEES ON APPEAL

**¶37** Husband requests an award of attorneys' fees on appeal under A.R.S. § 25-324. In the exercise of our discretion, we deny his request. Husband is awarded his costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A).

**CONCLUSION**

**¶38** We vacate the judgment for temporary support arrearages and remand for reconsideration of Husband's overpayment claim. Accepting special action jurisdiction over his challenges relating to the contempt, as directed by the Arizona Supreme Court, we deny relief and in all other respects, we affirm the superior court's orders.



AMY M. WOOD • Clerk of the Court
FILED: AA